RAILWAY COMPANY *v.* NEVILL.

Opinion delivered March 30, 1895.

1. *Carrier—When liability ceases.*

The liability of a railway company as insurer of goods received for shipment continues after their arrival at their destination until the consignee has had a reasonable time to remove the goods after notice to do so, or after a reasonable effort by the company to give him such notice.

2. *Carrier—Liability for goods destroyed by mob.*

A carrier is not relieved from liability for failure to deliver goods which it has undertaken to transport where the goods have been destroyed by a mob.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*Dodge & Johnson* for appellant.

1. A carrier's liability, as such, ends upon the completion of the transit, the unloading of the goods from the cars, and the safe deposit of same upon the platform or in the warehouse of the company. 8 Lea, 32 ; 9 A. & E. R. Cas. 248; 12 Heisk. 165 ; 55 A. & E. R. Cas. 622 ; following the Massachusetts rule, as laid down in 1 Gray, 263 ; 98 Mass. 212; 100 *id.* 455 ; 113 *id.* 521. · The following cases adopt the Massachusetts rule : 66 Ala. 167 ; 46 *id.* 63 ; 23 Cal. 268; 46 Ga. 433 ; 47 Ill. 132; 64 *id.* 284 ; 69 *id.* 164 ; 25 Ind. 434 ; 26 *id.* 140 ; 40 Iowa, 579 ; 25 *id.* 60; 83 Mo. 112 ; 56 *id.* 528 ; 55 *id.* 168 ; 8 Jones, L. (N. C.) 482 ; 60 Pa. St. 109 ; 92 *id.* 323 ; 37 L. J. Exch. 113 ; 36 *id.* 83 ; 42 L. T. N. S. 252 ; Redf. Railways, p. 104. The liability of appellant was, therefore, that of a warehouseman only, and no negligence was shown. 32 Ark. 225 ; 42 *id.* 204 ; 12 Wall. 254. The weight of authority is against the New Hampshire rule.

2.   The acts of a desperate and uncontrollable mob of rioters exonerate the company, even though liable as a carrier.   The strict rule that mobs, rioters etc., are not public enemies, has of late years been greatly and sensibly modified.    17 Com. B. (N. S.) 175 ; 102 N. Y. 563 ; 43 Hun, 233 ; 90 N. C. 398 ; 65 Ind. 188 ; 24 La. An. 406 ; 84 Ill. 36 ; 6 A. & E. R. Cas. 402 ; 17 Blatch. C. C. 421.

*W. P. & A. B. Grace* for appellee.

1.   A common carrier is an insurer of the safe delivery of goods, in the absence of an express contract to the contrary.   Hutch. on Car. sec. 1 ; Cooley on Torts, pp. 640–1 ; 2 A. & E. Enc. Law, 778, a nd notes.   The only exception to the rule is the "act of God or the public enemy."   Mobs, thieves, rioters, insurgents, etc., do not come within the definition of the "public enemy." Hutch. on Car. sec. 204 and notes ; *Ib.* sec. 205 ; 2 Kent, Com. secs. 602–3 ; 76 Tex. 337 ; Story on Bailments, sec. 338 ; 2 Tex. 115 ; Cooley, Torts, pp. 640–1 ; And. Law, Dict. 401 and cases cited ; 2 Bouv. Law Dict. "Public Enemy."   There is a distinction between *delay* in delivery and a *failure* to deliver.   A delay caused by human agencies over which the carrier has no control, is often excused by the courts.   See cases cited by appellant. But the contract *to deliver* is absolute, and only excused by "act of God and public enemy."   76 Tex. 337 ; 46 Miss. 458 ; 1 New Mex. 459 ; 39 Ark. 148 ; 65 Ind. 188 ; 89 Ala. 294 ; 3 A. & E. R. Cas. 495 ; 60 Mo. 199 ; Dudley, Law (La.), 159 ; 3 A. & E. R. Cas. 274.

2.   The more just and reasonable rule is that, after the goods arrive at destination, a reasonable time must be allowed the owner to receive and remove them ; and, until such reasonable time has elapsed, the liability of the company as a common carrier continues.   32 N. H. 523. The New Hampshire rule has been followed in a major-

ity of our States.   16 Mich. 79; 110 N. Y. 170; 45 *id.*
622; 19 Minn. 251; 5 Dutch. (N. J.) 393; 16 Kas. 333;
2 Bush (Ky.), 468; 24 La. An. 333; 2 Disney (Ohio),
144; 53 Penn. St. 411; 42 Ill. 133; 11 S. C. 158; 2 Head
(Tenn.), 490; 35 Vt. 604; 39 Wis. 449; 72 Tex. 175; 1
Abb. (U. S.) 1.   See also 46 Ark. 222.   As to what is
"a reasonable time," must be left to the circumstances
of each case.   45 N. Y. 184.

WOOD, J.   The appellant company received some
corn and hay at Pine Bluff for transportation to Lin-
wood station, there to be delivered, upon payment of
freight, to C. E. Nevill, the appellee.   About the hour
the freight train was to arrive, appellee appeared at the
station to receive his freight.   The train did not arrive
on time.   Appellee waited till after sunset, and returned
to his home.   Soon after his departure, the train came
in, and appellee's goods were safely deposited in appel-
lant's warehouse at Linwood.   Next morning appellee
returned with his teams to receive his goods, but during
the night a mob of negroes, which the civil authorities
were unable to control, set fire to appellant's station
house, and destroyed same, together with the goods of
appellee.   Appellee sued for and obtained judgment
against the company for the value of his goods, and the
company appeals.

The questions for our consideration are presented
by the following instructions:   (1) "That the receipt
of the goods by the company's agent at Linwood,
and placing them in the station house, did not, of
itself, change the relations existing between the con-
signee and the company, and change the liability of
the latter from that of carrier to warehouseman, be-
cause the court adopts what is commonly known as 'the
New Hampshire rule,' and holds that, before the liabil-
ity as carrier ceases and that of warehouseman begins,
the consignee must have had a reasonable opportunity to

remove the goods after notice to do so, or after a reasonable effort by the company to give him notice." (2) "The court further declares, upon the facts stated, the mob of rioters referred to was not a public enemy, in the legal meaning of that term ; and therefore its acts in destroying the property did not relieve the defendant of its liability, as a common carrier, to deliver the same to consignee."

1. Two well defined, but widely divergent, rules have been announced by the American courts upon the proposition embodied in the first of the above instructions. In 1854 the Supreme Court of Massachusetts determined that the liability of railroads as common carriers ceased the moment the goods of the consignee were removed from their cars and placed in a safe place upon their platforms within their depots, and that, from that time until the goods were called for and delivered to the consignee, the liability of the railroad was only that of warehouseman. *Norway Co.* v. *Boston etc. R. Co.* 1 Gray, 263. This rule has been approved in several States: Illinois, Indiana, Iowa, Georgia, California, Missouri, North Carolina, Tennessee.

In 1856 the Supreme Court of New Hampshire expressly departed from the doctrine of the Massachusetts court, holding that the liability of the carrier as such continued until the owner should have a reasonable time after the arrival of the goods to accept and remove them. *Moses* v. *Boston etc. R. Co.* 32 N. H. 523. This doctrine has been approved by the Supreme Courts of the following States, to-wit: Alabama, Louisiana, Kentucky, New Jersey, Kansas, Ohio, Vermont, Wisconsin, New York, Michigan, Minnesota, Texas, Connecticut, Pennsylvania.

Counsel for appellant cite Alabama and Pennsylvania as supporting the Massachusetts rule, but an examination of the cases of *Louisville etc. R. Co.* v. *Mc-*

*Guire*, 79 Ala. 395, and *Louisville etc. R. Co.* v. *Oden*, 80 *id.* 39, and the case of *Nat. Line Steamship Co.* v. *Smart*, 107 Pa. St. 492, will discover that Alabama and Pennsylvania are in line with the New Hampshire rule as to the consignee having a reasonable time in which to remove the goods, during which time the liability of the carrier as an insurer continues. Counsel for appellees are likewise mistaken in putting Tennessee in the New Hampshire column. See *Butler* v. *Railroad Co.* 8 Lea, 32.

But, whatever rule we adopt, we will be but going upon a well beaten path, and following in the footsteps of eminent jurists. It it is difficult to determine where lies the weight of authority amid such respectable conflict. But, considering the "broad principles of public policy and convenience, upon which the common law liability of the carrier is made to rest," the doctrine of the New Hampshire court commends itself to our favor. We think it embodies the better reason. Without entering upon a discussion of these principles (for we could not hope to add anything new), we simply announce our approval of the New Hampshire rule, as applicable to the undisputed facts of this case. This doctrine is supported, we believe, by a majority of the text writers, as well as the adjudicated cases. In addition to authorities cited in brief of counsel, see 2 Beach, 916; 3 Wood, 1908; 2 Redfield on Railways, 81; Story on Bailments, sec. 543, and Hutchinson on Car. sec. 373. The last author, in his excellent work on Carriers, after giving most cogent reasons for the soundness of the New Hampshire rule, concludes as follows: "The same reasons, therefore, upon which is based the severe accountability of the carrier for the safety of his charge, would seem to require that railway companies should be held to be custodians of the goods in the same character in which they received them until they had either tendered them

to the consignee, or had, after informing him of their arrival, given him a reasonable time within which to take them away. This is, as we have seen, the well settled law as to carriers by water, and no substantial reason can be urged why the rule should be further relaxed in favor of railroad companies."

Our own court, in *Turner* v. *Huff*, 46 Ark. 225, speaking of the question of notice in regard to carriers by water, said: "A carrier by water may deliver goods on the wharf, but as a general proposition the consignee is entitled to actual notice of their arrival, that be may have an opportunity to move or safely store them. The necessity of notice may, however, be waived by the previous course of dealing between the parties." The same rule is applicable to railroads. The Supreme Court of New York, in *Fenner* v. *Buffalo etc. R. Co.* 44 N. Y. 505, has covered the whole doctrine of notice and reasonable opportunity to remove the goods after arrival at place of destination, as follows: "If the consignee is present upon the arrival of the goods, he must take them without unreasonable delay. If he is not present, but lives at or in the immediate vicinity of the place of delivery, the carrier must notify him of the arrival of the goods, and then he has a reasonable time to take and remove them. If he is absent, unknown, or cannot be found, then the carrier can place the goods in its freight house, and, after keeping them a reasonable time, if the consignee does not call for them, its liability as a common carrier ceases."

As to what is reasonable time for removal, where the facts are undisputed, as in this case, is a question of law. Where there is a dispute about the facts, the question must be determined by the jury or court sitting as such. It should be said, however, that the question of reasonable time and opportunity to remove the goods is not in the least affected by any untoward or adventitious

surroundings peculiar to any particular consignee. Hutch. on Car. 377.

2.  Upon the second proposition, the authorities are practically one way.  Where there is a total failure to deliver goods, occasioned by the "depredations or the violence of mobs, rioters, strikers, thieves and the like," the carrier is liable.  For, says Mr. Hutchinson, "by the word 'enemies' in this connection is to be understood the public enemy of the country of the carrier, and not of the owner of the goods."  Hutch. on Car. 204, and authorities there cited. <span class="margin">2. Mob not a "public enemy."</span>

The charge of the trial court was in harmony with the views we have expressed, and its judgment is therefore affirmed.