THE GRATIOT STREET WAREHOUSE COMPANY

*v.*

THE ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD CO.

*Opinion filed April 17, 1906.*

1. APPEALS AND ERRORS—*alleged error in the manner of marking propositions of law is not presented in absence of exception.* Alleged error of the trial court in marking a proposition of law "held, but not controlling in this case," instead of marking it "held" or "refused," is not presented for review on appeal, where no exception was taken to the action of the court.

2. SAME—*errors not argued in Appellate Court brief are waived.* Alleged errors not argued in the brief and argument filed in the Appellate Court, as shown by the certified copy of that brief, are waived, and cannot be urged in the Supreme Court.

3. CARRIERS—*when liability of carrier ends as to car-load shipments of grain.* The liability of a railroad company, as a common carrier, in transporting grain in car-load lots, ceases upon delivering the car at the usual place for unloading or upon its side-track, where there is no special place for unloading designated by the contract or required in the usual course of business.

4. SAME—*when railroad company is not liable, as a carrier, for damage to corn.* Where a railroad company delivers car-load corn in good condition upon the side-tracks at the milling destination, it

is not liable, as a carrier, for damage thereafter occurring, owing to the fact that although the consignee's agents had notice the corn had arrived, it was permitted to remain in the cars for several weeks, during which time it became wet and heated.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding.

This is an action of assumpsit, brought on the 30th day of April, 1901, in the circuit court of St. Clair county by the plaintiff in error against the defendant in error on two bills of lading. The declaration contains two counts. The first count alleges that, on June 22, 1895, plaintiff in error delivered to defendant in error 40,000 pounds of corn in good order, its property, and of the value of $1000.00 to be carried by defendant in error from the city of East St. Louis in said county to Macon, in the State of Georgia, for a certain reward, and there to be delivered in like good order to the Juliette Mills for plaintiff in error; and, thereupon, defendant in error, by the name and style of "St. Louis and Cairo Short Line, June 22, 1895, John P. Gay," made and delivered to the plaintiff in error its bill of lading, and thereby promised the plaintiff in error, for the consideration mentioned, to safely carry said corn from the place of shipment to the destination stated, and there deliver the same in good order to the said Juliette Mills for the plaintiff in error; but the defendant in error, not regarding its said promise, then and there wrongfully suffered the said corn to become damp, wet, heated, and so out of order that it was greatly lessened in value, and plaintiff in error was thereby injured, wherefore the plaintiff in error has sustained damages to the extent of $1000.00, etc. The second count avers that, on the 27th day of June, 1895, the plaintiff in error delivered to the defendant in error 352,000 pounds of corn in good order, its property, and of the value of $15,000.00 to be safely carried

by the defendant in error from the city of East St. Louis to Macon, in the State of Georgia, for a certain reward, and there to be delivered in like good order to the Juliette Mills for plaintiff in error; and thereupon the defendant in error, by the name and style of "St. Louis and Cairo Short Line, June 27, 1895, John P. Gay," made and delivered to the plaintiff in error its bill of lading, and thereby promised the plaintiff in error, for the consideration mentioned, to safely carry said corn from the place of shipment aforesaid to the destination stated, and there deliver the same in good order to the said Juliette Mills for the plaintiff in error; but the defendant in error, not regarding its said promise, then and there wrongfully suffered the said corn to become damp, wet, heated, and so out of order that it was greatly lessened in value, and the plaintiff in error was thereby injured, wherefore, etc.

One bill of lading, issued June 21 or June 22, 1895, was upon one car of bulk corn, and the other, issued June 27, 1895, was for ten cars. The cars were to be carried from East St. Louis to Macon, Georgia, with the privilege of having the shipment stopped at Juliette Mills for milling, Juliette Mills being a station about ten miles from Macon.

The defendant in error filed the general issue, and two special pleas setting up the five years' limitation statute as a defense. A demurrer to the special pleas was sustained. The defendant gave notice that it would rely specially upon the conditions attached to the bill of lading. A jury was waived, and the court tried the case. The cause was transferred by change of venue from the circuit court of St. Clair county to the city court of East St. Louis.

Both parties submitted propositions of law, some of which were held and others refused. In passing upon those asked by plaintiff in error, the court marked them as "held, but not controlling in this case." The issues were found for the defendant in error, and judgment was rendered against plaintiff in error for costs. This judgment has been affirmed

by the Appellate Court; and the present appeal is prosecuted from such judgment of affirmance.

FRANK K. RYAN, E. P. JOHNSON, and M. MILLARD, for plaintiff in error.

KRAMER & KRAMER, (JOHN G. DRENNAN, of counsel,) for defendant in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

It is conceded that, when the car-loads of corn, which were shipped from East St. Louis to Macon, Georgia, arrived at the latter place, the corn was seriously damaged. The defendant in error is sued as a common carrier, and the declaration is upon the written bills of lading, issued by the defendant in error. As the case was tried before the court without a jury, the questions of fact are settled by the judgment of the trial court in favor of defendant in error, and the judgment of the Appellate Court affirming the judgment of the trial court. The questions of fact were, whether the corn was damaged because of leaks in the cars, in which it was transported, which let in the water upon the corn, or whether the corn was spoiled by being allowed to remain in the cars on the railroad tracks after their arrival at Juliette Mills, ten miles from Macon, Georgia. The evidence shows, that the cars, containing the corn, arrived at Juliette Mills on different days from the 1st to the 8th or 10th of July, 1895, and that they remained upon the tracks at that station until about the 26th or 29th of July, 1895, when they were carried on to Macon, Georgia. It is contended on the part of plaintiff in error, that the cars, in which the defendant in error transported the corn from East St. Louis, were defective because of being leaky, and that the corn was spoiled because of water dripping upon the corn through the leaks in the cars. If this was so, then the defendant in error was liable as a common carrier, because it was its duty to furnish

proper cars for the carriage of the corn.   On the contrary, it is contended by the defendant in error that the cars were in good repair, and that the corn, when it arrived at Juliette Mills, ten miles from Macon, Georgia, was in good condition, and that the damage was caused by the cars, in which the corn was stored, being allowed to stand on the tracks some three weeks, that is, from the time of their arrival about the 1st of July to the 26th or 29th of July.   The testimony tends to show, that at the point where the cars were allowed to remain on the tracks at Juliette Mills, the corn in them was liable to become damaged on account of the excessive hot weather in that climate.   If the corn was damaged for the reason last stated, then defendant in error was not liable as a common carrier.

*First*—Upon the trial below, plaintiff in error asked the court to hold five propositions as law in the decision of the case.   The court did not mark these propositions either as "held" or as "refused," as required by the statute, but the court marked each proposition as follows:   "Held, but not controlling in this case."   It is seriously contended by plaintiff in error, that the court erred in not marking these propositions as either "held" or "refused," and in marking them as "held, but not controlling in this case."   The alleged ground of this contention is that, if the court held a proposition to be the law, it should be controlled by the application of that proposition of law to the facts of the case in making its decision; and that the court could not render a correct judgment without giving such proposition a proper application.   In other words, the trial court is said to have erred, because it held that the propositions in question did not control in its decision of the case.   Whether or not the trial court erred in this respect is not before us for consideration, because plaintiff in error took no exception to the action of the court in thus marking the propositions asked by it.   It is insisted by counsel that, when the court marked the propositions as held but not as controlling in the case, it did the

same thing, practically, as though it rejected them altogether. That is to say, it did the same thing, as though it had marked the propositions "refused." It cannot be denied that, if the court had marked the propositions "refused," error could not be assigned on account of such refusal, unless the plaintiff in error took exception to such action of the court. It follows that, when the court did what is alleged to have been equivalent to marking the propositions "refused," plaintiff in error, to bring the matter properly before this court, should have taken exceptions to the action of the court below.

*Second*—The defendant in error asked the court to hold as law in the decision of the case six propositions. Three of these were marked "refused" by the trial court, and three, the fourth, fifth and sixth, were marked "held" by the trial court. The plaintiff in error here urges that the trial court erred in marking the fourth, fifth and sixth propositions "held." Defendant in error, by leave of court, has filed a certified copy of the brief and argument of the plaintiff in error in the Appellate Court. An examination of this brief and argument shows, that there no error was complained of on account of the holding of the fourth and fifth propositions submitted by the defendant in error as law in the decision of the case. As these propositions numbered 4 and 5 were not complained of in the Appellate Court, the alleged errors based upon them were waived and abandoned in that court, and hence cannot be rightfully urged here.

*Third*—It follows that the only matter for our consideration is the error, assigned by the plaintiff in error on account of the holding as law the sixth proposition, asked by the defendant in error upon the trial below. The sixth proposition is as follows: "That the evidence is not sufficient to sustain a judgment in favor of the plaintiff, and judgment should be had for the defendant."

The railroad of the defendant in error ran from East St. Louis to Brookport, Illinois, on the Ohio river opposite

Paducah, Kentucky. That is to say, the line of defendant in error ended at Brookport. When the cars arrived at Brookport, or Paducah, in Kentucky, opposite Brookport, they were delivered to another railroad company, to-wit, the Paducah, Tennessee and Alabama Railroad Company, a connecting line, and from there were transported over various connecting lines, until they reached the station, called Juliette Mills, the last connecting railroad being what is called in the testimony the Southern Railway Company. The testimony tends to show that, when the cars arrived at Paducah, they were inspected and found to be in sound condition. The testimony also tends to show, that, when the cars arrived at Juliette Mills, they were, upon the next day after their arrival, examined by one McGhee, a miller, and that there were no signs in any of the cars of leakage. This miller opened the cars, "and got down into them and dug into them with his hands." It thus appears from the testimony that the cars were in good repair when they reached the end of defendant in error's line at Brookport, Illinois, or Paducah, Kentucky, and that they were in good condition upon their arrival at Juliette Mills, ten miles from Macon, Georgia. Evidently, therefore, in making the finding which it did, the trial court was of the opinion that the corn had not been injured on account of the leakage of the cars.

There is also evidence, tending to show that, as soon as the cars were examined by the miller, McGhee, upon their arrival at Juliette Mills, the Juliette Mills were notified. It also appears that the railroad company notified McGhee, the miller, of the arrival of the corn within 24 hours after it reached Juliette Mills. The correspondents of the plaintiff in error at Macon, Georgia, were Nelms & Jones of that city. It is shown that Jones received notice of the arrival of the cars at Juliette Mills as early as the 10th day of July. The Southern Railway Company had no depot or warehouse at Juliette Mills, and the cars were allowed to stand upon a side-track after their examination by McGhee, the miller.

Jones did not come to Juliette Mills to examine the corn until July 26, 1895, or some days later than that. At that time the corn was found to be damaged, but it had stood upon the side-tracks during the hot weather of July for some three weeks or more after its arrival at Juliette Mills.

The evidence tends to show that there was a delivery of the cars to the Juliette Mills about the time of their arrival, but if this was not so, the corn was stored in the cars upon the side-track of the Southern Railway Company soon after their arrival.

It is the settled law of this State that carriers by railroad are not bound to deliver the goods carried to the consignee personally, or to give notice of their arrival, to discharge their liability as carriers; and that, when the goods have reached their destination, if the consignee is not present to receive them, the carrier may store them safely in a suitable warehouse to await the demand of the consignee. (*Chicago and Alton Railroad Co.* v. *Scott,* 42 Ill. 132; *Gregg* v. *Illinois Central Railroad Co.* 147 id. 550.) When the carrier has brought the goods or the freight to their destination, it has a right to place them in a safe and secure warehouse, and its liability then changes from that of a common carrier to that of a warehouseman. When the carrier thus assumes the new duties of warehouseman, he is liable only for ordinary care and diligence in the preservation of the property. *Chicago and Alton Railroad Co.* v. *Scott, supra; Illinois Central Railroad Co.* v. *Carter,* 165 Ill. 570).

Where the carrier has no depot or warehouse at the place of destination for the storage of such freight as corn, it may be warehoused in the cars on the side-tracks. In *Gregg* v. *Illinois Central Railroad Co. supra,* it was said (p. 555): "The law is well settled in this State that the liability of a railroad company, as a common carrier of freight, ceases upon the unloading of the goods from the car at the place of destination, and placing them in a safe and secure warehouse, or, where the carrier is not required in the usual course of

business, or expected, to remove the freight from the car, as in the case of grain in bulk, coal, lumber and the like, by delivering the car in a safe and convenient position for unloading, at the elevator, warehouse or other place designated by the contract or required in the usual course of business, or, if no place of delivery is thus designated or required, on its side-track, in the usual and customary place for unloading by consignees."

There is no doubt, therefore, that upon the arrival of the cars at Juliette Mills, to which point they were consigned by the terms of the bills of lading, the Southern Railway Company, the last connecting line in the transportation of the corn, had a right to store the same in its cars upon its side-tracks at Juliette Mills. It follows that, if the corn was damaged while being thus stored in cars upon the side-tracks between the 1st and 26th of July, 1895, it was not the fault of the defendant in error as a common carrier, but it was either the fault of the defendant in error or of the Southern Railway Company as a warehouseman, or of Nelms & Jones, to whom it was alleged that the grain was sold by the plaintiff in error, in not taking away the corn when notified of its arrival.

The evidence tended to show, and the trial court was justified in finding, that the damage or loss occurred upon the tracks of the Southern Railway Company, while the cars were allowed to remain upon their side-tracks. This action is not brought against the defendant in error as a warehouseman, nor against the Southern Railway Company as a warehouseman or as common carrier, but, as has already been said, is brought against the defendant in error as a common carrier. The evidence tends to show that the damage to the corn was caused, either by the negligence of the defendant in error or of the Southern Railway Company at Juliette Mills, as warehouseman, or by the negligence of Nelms & Jones, the correspondents of plaintiff in error at Macon, Georgia, in not unloading the cars soon enough after receiving notice of

their arrival.   In any event, this action does not lie, under the facts of this case, against the defendant in error as a common carrier.

Accordingly, the judgment of the Appellate Court, affirming the judgment of the city court of East St. Louis, is affirmed.                    *Judgment affirmed.*