TEXARKANA & F. S. RY. CO. v. TWIN CITY PRODUCTS CO.    (No. 2063.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 24, 1919. Rehearing Denied Feb. 13, 1919.)

1. CARRIERS ⬡⟶177(3) — INTERSTATE SHIPMENTS—LIABILITY OF INITIAL CARRIER.

While under Interstate Commerce Act, § 20, as amended by Hepburn Act, § 7 (U. S. Comp. St. § 8604a), the initial carrier is liable for injuries caused by negligence of the connecting carrier, while it held the property as such, the initial carrier is not liable for the connecting carrier's negligence as a warehouseman.

2. CARRIERS ⬡⟶177(3) — REFUSAL OF SHIPMENT—NOTICE TO CONSIGNOR.

Where a consignee refuses to accept a shipment, duty to notify the shipper rests on the carrier as such, and so, where a connecting carrier negligently delayed to notify a shipper of refusal to accept an interstate shipment, and it spoiled in the meantime, the initial carrier is liable.

Appeal from Bowie County Court; J. B. Lytal, Judge.

Action by the Twin City Products Company against the Texarkana & Ft. Smith Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

This was a suit by appellee against appellant to recover $153.12 as the value of certain cider delivered by the former to the latter at Texarkana, in Texas, for transportation over its line of railway and its connecting lines (to wit, the Kansas City Southern Railway and the Gulf, Colorado & Santa Fé Railway) to Merryville, in Louisiana, and delivery there to one Mayo and to one Eaves. The shipments were made June 7, 1917. The contracts covering same were evidenced by "straight" bills of lading .of the standard form approved by the Interstate Commerce Commission June 27, 1908. The trial in the justice court, where the suit was commenced, resulted in a judgment denying appellee the right it sought. The judgment of the county court, to which appellee prosecuted an appeal, was in its favor for said sum of $153.12, and in addition thereto for $20 as an attorney's fee it was entitled to recover.

It appeared from the testimony heard at the trial in the county court that the cider was duly transported to Merryville, reaching that place on June 12, 1917, and that on June 13, 1917, the agent at Merryville of the Gulf-Colorado Railway Company (the terminal carrier) personally notified Mayo and Eaves, the consignees, respectively, of the cider, that same was "in the freight depot at Merryville." It further appeared that said consignees "refused to receive said shipments or claim the same." It further appeared that, had appellee been promptly notified of such refusal, it could and would have disposed of the cider to other persons for as great a sum, it inferentially appeared, as the consignees were to pay for it. It further appeared that said Gulf, Colorado & Santa Fé Railway Company, without any notice to appellee that the consignees had refused to receive the cider, stored same in its warehouse, where it became sour and valueless. And it further appeared that the cider after it had been so stored about 40 days was sent back to Texarkana, where it was tendered by appellant to appellee, who refused to receive it.

King & Estes, of Texarkana, for appellant.
Weaver & Spivey, of Texarkana, for appellee.

WILLSON, C. J. (after stating the facts as above). [1, 2] By force of section 20 of the Hepburn Act (section 8604a, U. S. Compiled Statutes), appellant, having received the cider for transportation from a point in this state to a point in another state, became liable to appellee for any damage or injury thereto caused by it, or by either of its connecting carriers, while it held same as a common carrier. We do not understand appellant to be in the attitude of contending to the contrary of the statement just made. Its contention is that the damage to the cider was not caused by it, nor by a failure of either of its connecting carriers to discharge a duty it owed to a common carrier, but by the failure of one of them, to wit, the Gulf, Colorado & Santa Fé Railway Company, to discharge a duty it owed, if at all, as a warehouseman. If the contention is sound the judgment is wrong, for initial carrier is not liable by force of the statute referred to for the act or omission of the delivering carrier resulting in injury to the goods while it holds same as a warehouseman. 10 C. J. 526; Hogan Milling Co. v. Ry. Co., 91 Kan. 783, 139 Pac. 397. Whether the contention is sound or not depends, we think, upon whether the delivering carrier is charged with a duty to notify the consignor when the consignee refused to

receive the goods. The question seems to be an open one in this state, and the holding in other jurisdictions is not uniform. Mr. Hutchinson in his work on Carriers (2 Hutch. on Carriers, § 721; and see 10 C. J. 270), after noting the conflict in the decision, says, and we agree, that the better opinion is that such a duty rests upon the carrier as such. If it does, then the judgment is not erroneous; for it appeared from uncontroverted testimony that had appellee been promptly notified of the fact when the consignee of the cider refused to receive same it could and would have disposed of the cider to other persons before same became sour and worthless.

The judgment is affirmed.

⬦⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error denied by Supreme Court April 2, 1919.