**HINES, Director General of Railroads, v. FIRST GUARANTY STATE BANK OF AUBREY et al. (No. 2341.)**

(Court of Civil Appeals of Texas. Texarkana. Feb. 13, 1921. Rehearing Denied March 10, 1921.)

1. **Appeal and error** ⬦719(8) — **Findings not assigned as error are conclusive.**

Findings of fact by the trial court not assailed by any assignment of error are to be taken as facts by the Court of Appeals.

2. **Carriers** ⬦178—**Initial carrier after reasonable time from notice to consignee liable only as warehouseman.**

The carrier issuing a through bill of lading which, under Rev. St. art. 711, makes it liable until the goods are delivered, may bind itself to transport beyond its own line under article 731, but its liability as carrier is limited under article 712, if it uses due diligence to notify the consignee and the goods are not taken by the consignee within a reasonable time after such notice, after which time the carrier is liable only as warehouseman.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Trial ⬥141 — Reasonable time to remove goods from carrier question of law on undisputed facts.**

Whether a reasonable time for the removal of the goods had elapsed since notice of their arrival to the consignee varies with the circumstances of each particular case, but when the facts are undisputed the question of what length of time is reasonable becomes one of law to be determined by the court.

**4. Carriers ⬥140—Four days for removal of goods by consignee held reasonable time.**

Where the consignee's agent was notified of the arrival of the goods immediately thereafter, but, though he was situated in the vicinity of the depot, he did not attempt to remove the goods for four days thereafter, a reasonable time for removal had expired, and the carrier was liable only as warehouseman.

**5. Carriers ⬥143 — Liable as warehouseman for storage in leaking car.**

Though a carrier's liability has become that of warehouseman only, he was liable as such for permitting a shipment of meal to remain in the car in which it was shipped, and which had a leaky roof and walls, so that the meal was injured by water.

On Motion for Rehearing.

**6. Carriers ⬥178—Initial carrier liable as warehouseman for improper storage after carriage.**

Under Rev. St. arts. 711, 712, an initial carrier who contracts to transport the goods to destination and there deliver to consignee is liable as warehouseman for damages to goods while remaining in the car in which they were shipped, after their transportation by a connecting carrier.

**7. Carriers ⬥143 — Absence of warehouse does not excuse storage in leaky car.**

The fact that a carrier had no depot or warehouse at the place of destination within which to store the goods does not relieve its liability for permitting them to remain in a leaky car, though it had the right to warehouse the goods in a car, which in the exercise of ordinary care was a safe and suitable place.

Error from District Court, Smith County; J. R. Warren, Judge.

Suit by the Aubrey Milling Company against S. Friedlander and the receivers of two certain railway companies, in which the First Guaranty State Bank of Aubrey intervened, setting up its ownership of the cause of action by assignment, and in which Walker D. Hines, as Director General of Railroads, was substituted as defendant for both receivers. From a judgment for the intervener against Walker D. Hines, the latter brings error. Affirmed.

The Aubrey Milling Company, a partnership, at Aubrey, Tex., contracted with S. Friedlander, of Tyler, Tex., to sell and deliver to him 1,700 sacks of meal f. o. b. cars at Tyler, Tex. It was agreed that the shipment was to be made on shipper's order, notify S. Friedlander at Tyler, with a sight draft for the amount attached to the bill of lading. S. Friedlander further agreed to receive and unload the meal for the shippers upon its arrival at Tyler. Pursuant to this agreement, the Aubrey Milling Company on March 13, 1918, delivered to the Texas & Pacific Railway Company at Aubrey the 1,700 sacks of meal, which was loaded on that day into a car furnished by the railway company for the purpose. The car was transported from Aubrey in the afternoon of March 15, 1918, by the Texas & Pacific Railway Company, arriving at Mineola, Tex., on March 17, 1918, and was then delivered to the International & Great Northern Railway Company, and by that railway carried to Tyler, where it arrived on March 19, 1918. On the day of the arrival of the car at Tyler, S. Friedlander was notified of its arrival by the agent of the railway. S. Friedlander failed to inspect the shipment until the morning of March 23, 1918, at which time he opened the car to unload same; but, finding a portion of the meal wet and soaked with water, and all the meal wet and damp and fermenting, he promptly rejected the shipment. He at once notified the consignor of the condition of the meal and of his rejection. The agent of the delivering railway company was promptly informed by S. Friedlander of the condition of the meal and of his rejection of the shipment. The appellant was not notified, and had no notice of inspection and rejection, except as it may be notified through the delivering agent. The Aubrey Milling Company brought the suit against the receiver of both railways and against S. Friedlander for damages. As grounds for liability the petition alleged:

(1) That "while the car was in transit from Aubrey, Tex., to Tyler, Tex., the same was rained upon and the water leaked into the car and upon the contents" as the result of negligent placing and loading the meal in a car "which was not waterproof, the roof of which leaked when rained upon, and which afforded the contents of said car no adequate protection against ordinary and usual rains"; (2) that the car of meal was damaged by rains through "negligently failing to provide a safe and adequate place for holding and storing said corn meal pending delivery of same to the consignees or their order after the car containing the meal reached its destination;" and (3) "negligently permitting the corn meal to remain in said railway car for four or five days after the said corn meal had become wet and damaged, as above described, while the same was being held at Tyler by the railway company pending delivery to the consignees or their order."

As grounds of liability against S. Friedlander the petition alleged that "the said corn meal became heated and began to fer-

ment and germinate and deteriorate" as a result of his "negligent failure and refusal to open and unload said car of meal promptly upon its arrival at Tyler or within a reasonable time thereafter, as he had agreed to do," after having been "notified within a few hours after the arrival of said car of meal at Tyler" of its arrival there.

The defendant Friedlander entered a general denial, and specially answered that he promptly notified the plaintiff of his rejection of the meal, and by a plea in reconvention sought to recover damages for breach of alleged contract for shipment of a special kind of meal.

The defendant Director General answered by denial, and specially pleaded negligence of the plaintiff and his agent Friedlander in loading the meal in the car, and the exercise of ordinary care of the agents of the railway in furnishing the car, the prompt notification of the consignee of the arrival of the car, and the exercise of care in preserving the meal after its arrival, and the negligence of the shipper in not removing same proximately causing any damage occurring.

The First Guaranty State Bank of Aubrey intervened, setting up its ownership of the cause of action by assignment.

The court entered judgment in favor of the bank against the Director General as substituted defendant of the receiver of the Texas & Pacific Railway, and in favor of the Director General as substitute defendant for the receiver of the International & Great Northern Railway, and in favor of S. Friedlander, but denying him a recovery on his plea in reconvention. The original plaintiff and the receivers were dismissed from the suit. It is the Texas & Pacific Railway Company by the Director General that appeals.

The court made special findings of fact. It was found as a fact: That the plaintiff paid to the Texas & Pacific Railway Company the transportation charges covering the shipment from Aubrey to Tyler and "received a through bill of lading for same, the railway company agreeing to carry said meal from Aubrey to Tyler with reasonable dispatch and to deliver the same upon arrival at destination upon the shipper's order, notifying Friedlander"; that the meal, when loaded by plaintiff in the car at Aubrey was in good, sound, and dry condition, and "that it would not have heated or fermented on account of the inherent properties in the meal before it was finally unloaded in Tyler on March 26, 1918"; that the railway car furnished by the Texas & Pacific Railway Company to plaintiff for loading the meal "was defective and unsafe, and that its roof and sides leaked water when rained upon, and that it did not afford the contents thereof adequate protection against ordinary rain and other elements, and that plaintiff had no notice at or prior to the loading of the meal of the condition of the car"; that it rained in Tyler on the afternoon and night of March 22, 1918, and at that time said meal was still in the said car in which it was originally loaded on the tracks of the International & Great Northern Railway Company at Tyler, and that "on the morning of March 23, 1918, when defendant Friedlander opened said car to unload the same, about one-third of the meal in said car was wet and soaked with water, and that all of said meal was damp and the same was heating and fermenting"; that the wetting of the meal directly and proximately resulted from the roof and sides of the car being in a leaky and unsafe condition and the water from said rain leaking through the same on the meal, and that "the heating and fermentation of all of said meal directly and proximately resulted from a portion of the same being wet from water leaking through the roof and sides of said car and thereby creating a dampness and great deal of moisture throughout the car"; that the fact that the Texas & Pacific Railway Company furnished to plaintiff a leaky car and the failure of the railway company to furnish a safe and waterproof car to plaintiff for loading and shipping the corn meal was the direct and proximate cause of the damage to the meal; that the meal was promptly rejected by Friedlander when he discovered its damaged condition, but that "neither of defendant railway companies notified plaintiff of such damage, but permitted said meal to remain closed up in said car until March 26, 1918, when it was finally unloaded by defendant Friedlander after he had gotten a release of the bill of lading from plaintiff"; that the car of meal was inspected and unloaded within a reasonable time after its arrival in Tyler and after Friedlander had been notified thereof; and that "it is usual and customary at that point for consignees of carload commodities to permit the same to remain unloaded as long a time after arrival as was done in the present case."

Young & Stinchcomb, of Longview, and J. A. Bulloch, of Tyler, for plaintiff in error.

Maynor, Ramey & Storey, and Price & Beaird, all of Tyler, for defendant in error.

LEVY, J. (after stating the facts as above). The first assignment of error presents the point heretofore decided in Hines v. Mills, 218 S. W. 777, and we conclude that the assignment should be overruled.

Appellant insists that under the evidence it is not liable for the loss and damage to the meal either as a carrier or as a warehouseman, and that the court erred in rendering the judgment for the plaintiff. The following facts are to be considered as established: That S. Friedlander was admittedly authorized to act for the shippers at Tyler; that the meal reached Tyler on March 19, 1918; and that in the afternoon of the same

day S. Friedlander was promptly notified by the agent of the terminal carrier of the arrival of the car of meal; that S. Friedlander did not open the car to unload same, or attempt to have the meal removed from the car, before the morning of March 23, 1918; the meal in the car was not damaged before and until "it 'rained in Tyler on the afternoon and night of March 22, 1918'"; the car in which the meal was loaded was defective, "in that its roof and sides leaked water when rained upon, and it did not afford the contents thereof adequate protection against ordinary rain and other elements." The court further found as a fact "that the plaintiffs paid to said railway company (the Texas & Pacific) transportation charges covering said shipment from Aubrey, Tex., to Tyler, Tex., and received a through bill of lading for same, the railway company agreeing to carry said meal from Aubrey to Tyler with reasonable dispatch and to deliver same upon arrival at destination upon shipper's order, notify S. Friedlander."

[1] This finding of fact being unassailed by appellant by any assignment of error, this court would be bound to take the finding as a fact. The question then is: What was the status of appellant at the time the damage occurred to the meal?

[2] Under its undertaking of "through bill of lading," which is the controlling fact in the decision of the question, the appellant, under article 711, R. S., would "be liable as common carrier from the commencement of the trip or voyage until the goods are delivered to the consignee at the point of destination." A railway company may by contract, as the trial court found the appellant did do, bind itself to transport beyond its own line in this state. Railway Co. v. Hill, 63 Tex. 381, 51 Am. Rep. 642; article 731, R. S. The liability as a common carrier, though, is modified by article 712, R. S., to the extent that, "if the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee, and have in consequence to be stored in the depot or warehouses of the common carriers, they shall thereafter only be liable as warehousemen." The object of the notice in this article is to give the consignee an opportunity to remove or take his property from the possession of the carrier after the transit is terminated. As said in Railway Co. v. Haynes, 72 Tex. 175, 10 S. W. 398:

"After such notice has been given, or due diligence used to give it, if the thing be not received within a reasonable time, the carrier may store it in a safe place, which in some cases and with some classes of property may be the car in which transported, and from the expiration of such reasonable time, responsibility as carrier will cease, and that of warehouseman begin."

As laid down in 4 R. C. L. § 223,

"The owner is entitled to only a reasonable opportunity to take his property from the possession of the company after the transit is terminated, and if he does not do it at the earliest practicable moment he may thereby be deemed to have consented that it should remain in the possession of the company under the more limited liability of a warehouseman."

So that it conclusively appears from the evidence that "due diligence" was used by the railway to notify S. Friedlander, and that the law and the contract were both complied with by the appellant. "Due diligence" being established in favor of appellant as to notice to S. Friedlander, the further question would be as to whether or not S. Friedlander had "a reasonable time" after such notice to take the meal from the possession of appellant as a carrier by the exercise of ordinary diligence on his part, before the rain "on the afternoon and night of March 22, 1918." The court does not find that S. Friedlander did not have a reasonable time after notice and before the damage to unload the car, but does find that "from the period from the date of the notice to the morning of March 23 when Friedlander inspected the meal in the car was" a reasonable time within which to inspect and unload same. If the morning of March 23 be, as found by the court, a reasonable time in the common course of business for S. Friedlander to take the meal from the car after notification of its arrival, then the liability of appellant as a carrier was, under the facts, existing at the date and time of the damage by the rain on March 22.

[3, 4] What constitutes a reasonable time for the removal of goods by a consignee must, of course, vary with the circumstances of each particular case. But when the facts are undisputed the question of what length of time is reasonable becomes one of law to be determined by the court. Express Co. v. Duncan, 193 S. W. 413; Railway Co. v. Golden, 211 S. W. 465. And if in the particular facts of this case it is necessary for this court to conclude, as a matter of law, as insisted by appellant, and which we do conclude, that S. Friedlander, situated in the vicinity of the depot as he was, did not within a reasonable time after notice of the arrival of the car inspect and take the meal away, such finding would still not relieve the appellant of liability for the damage and loss to the meal; for appellant would nevertheless be liable, under the pleading and evidence, as a warehouseman. The plaintiff's petition alleged that—

"The agents, servants, and employees of the Texas & Pacific Railway and International & Great Northern Railway, without consent of the plaintiff, negligently failed to provide a safe and adequate place for and to use ordinary care in holding and storing said corn meal pending

delivery of same to the consignees or their order."

[5] The appellant on its "through" undertaking, as found by the court, would be liable, as a matter of law, "until the goods were delivered to the consignee at the point of destination." Articles 711 and 712, R. S. The connecting carrier would simply be appellant's agent. Article 731, R. S. All the damage through rain occurred, under the evidence, on March 22, when the appellant's liability as a warehouseman, as we conclude, had begun. And the evidence warrants the finding of the court that the appellant had the meal in a leaky car, and that "the failure of said railway company to furnish a safe and waterproof car was the direct and proximate cause of the injury and damage to the meal." As a warehouseman the duty was upon appellant to exercise ordinary care to keep the meal from damage, and this duty was continuing until the possession of the meal was properly taken from the appellant. The neglect or refusal of the consignee to take the goods from the car would not relieve the warehouseman of the duty of ordinary care. The penalty of the refusal or neglect of the owner or consignee to take possession of property is, not to lose the value of the goods because of his own neglect, but to become liable for storage charges. Article 6590, Vernon's Sayles' Statutes. The railway company also has the remedy provided in article 732, R. S.

We have considered all the other assignments of error, and think that they should be overruled.

The judgment is affirmed.

On Motion for Rehearing.

[6] Plaintiff in error says:

"As we understand the opinion in this case, the court holds that the plaintiff in error is liable as a warehouseman. Article 731 does not make the connecting carrier the initial carrier's agent except as to the contract of carriage. This court has overruled its opinion in T. & F. S. Ry. Co. v. Twin City Products Company, 208 S. W. 989."

The two cases are entirely dissimilar. The holding in the instant case was only that the Texas & Pacific Railway Company was liable, under the facts as found by the trial court, for the injury to the goods as a warehouseman. The trial court found as a fact that the bill of lading issued by the Texas & Pacific Railway Company was "a through bill of lading for the same (the goods), the railway company agreeing to carry said meal from Aubrey to Tyler with reasonable

dispatch and to deliver the same upon arrival at destination upon the shipper's order, notifying Friedlander." "This finding of fact," as stated in the original opinion, "being unassailed by appellant, this court would be bound to take the finding as a fact." The original opinion is entirely dependent upon this fact, so found by the trial court, of "a through bill of lading" being the real and true contract of shipment. Under this finding of fact, then, the contract of "through shipment" made with the shipper contemplated and required that the Texas & Pacific Railway Company, as a carrier, not only take the goods all the way to Tyler, the agreed "place of destination," but as well make "delivery" there to the consignee. Having made such contract, the Texas & Pacific Railway Company would legally be bound to perform its terms. And the liability of the Texas & Pacific Railway Company as a common carrier, in virtue of the contract of "through shipment" and the duty imposed thereby by law (article 711) continued "from the commencement of the trip" at Aubrey "until the goods are delivered to the consignee at the point of destination" at Tyler. Though this duty as a common carrier is performed in virtue of the statute (article 712) "when the carrier at the point of destination shall use due diligence to notify the consignee and the goods are not taken by the consignee," yet such railway company is not relieved of any further responsibility for the custody and protection of the goods derived in virtue of the contract of transportation and of necessity continued in its possession by the failure or refusal of the consignee to take possession of the same. The responsibility of bailee or "warehouseman" then attaches for the custody and protection of the goods. Article 712. That was the relation of the Texas & Pacific Railway Company to the goods in its possession at the time of the loss. As a warehouseman after the refusal of the consignee to take the goods the Texas & Pacific Railway Company continued liable, in the exercise of ordinary care, for the safe-keeping of the goods in its custody and possession; and, if it suffered them to be damaged for want of such ordinary care, as found by the trial court, to keep them in a safe and suitable place, it will be liable.

[7] The fact that appellant had no depot or warehouse at the place of destination would not relieve it of its responsibility as a warehouseman. The appellant had the right to warehouse the goods in a car if, in the exercise of ordinary care, that was a safe and suitable place. Warehouse Co. v. Railway Co., 221 Ill. 418, 77 N. E. 675.

The motion is overruled.