## Phillipson & Company, Appellee, v. Grand Trunk Western Railway Company, Appellant.

## Gen. No. 30,104.

1. CARRIERS—*liability for misdelivery*. If property is misdelivered by a carrier through its negligence or that of its agents, it is liable in assumpsit for the value of the property; but if such misdelivery is caused by negligence of the consignee, carrier is not liable.

2. CARRIERS—*liability as insurer and warehouseman*. Where consignee was notified that shipment had reached destination and had been placed in warehouse, the carrier's liability became that of a warehouseman and not an insurer.

3. CARRIERS—*when misdelivery caused by negligence of consignee*. Where carrier delivered notice of arrival of goods to consignee, and consignee stamped notice with rubber stamp and gave it to boy to be delivered to teamsters, but boy lost it or delivered it to a stranger, misdelivery of the goods was occasioned through the negligence of the consignee, and the carrier was not liable.

Appeal by defendant from the Municipal Court of Chicago; the Hon. MATHEW D. HARTIGAN, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1925. Reversed. Opinion filed October 6, 1925.

KRETZINGER, KRETZINGER & SMITH, for appellant.

THEODORE RUBOVITS, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

The judgment appealed from in this case was for the value of one case of woolen cloth purchased by plaintiff from a manufacturer in Massachusetts and shipped to the plaintiff. When it reached Chicago over the line of the defendant company, the latter gave notice to the plaintiff of its arrival here upon a form which contains the following: "This notice does not constitute an order *unless signed by the consignee.*" Plaintiff received the notice, stamped its name upon it three times with a rubber stamp and gave it to a messenger boy to be delivered to a firm of teamsters who did all the plaintiff's hauling. The messenger boy did not deliver the notice to plaintiff's teamsters, but either lost it or delivered it to a stranger. The person who found it, or received it from plaintiff's messenger boy, presented it to defendant, paid the freight charges, and took the goods from defendant's freight house in Chicago.

In a suit of this character, if the proof shows that the property is misdelivered by the carrier through *its* negligence, or that of its agents, the carrier is liable in assumpsit for the value of the property (*Chicago & N. W. R. Co. v. Ames,* 40 Ill. 249), but if such misdelivery is caused by the negligence of the consignee, whereby the carrier is misled as to the person to whom delivery should be made, the carrier is not liable. (10 Corpus Juris 267.) "In such case the familiar principle would be applicable that where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud." (*Raleigh & G. R. Co. v. Lowe,* 101 Ga. 320, 330.) It appears from the evidence that both plaintiff and defendant followed their usual practice in similar cases. It was the custom of the plaintiff, upon receipt of such a notice of the arrival of goods, to stamp the notice with a rubber stamp and send it to its teamsters, and the

notice thus stamped was used by the teamsters as evidence of authority to the person presenting the same to receive the goods from the defendant and was so treated by both plaintiff and defendant.

Plaintiff cites and relies upon *Pacific Exp. Co. v. Shearer*, 160 Ill. 215, where it was held that an express company is an insurer of the safe delivery of a package of money to the real person to whom it is consigned and cannot escape liability for a misdelivery by showing that it was delivered to an impostor on the strength of a telegram addressed to the consignee, which the impostor had secured by using the name of the consignee without his knowledge or consent. There are two reasons why that case is not in point: First, the misdelivery in that case was not caused by any act or neglect of either the sender or the consignee, but was due to the company's own negligence in accepting the telegram addressed to the real consignee as evidence of the identity of the impostor who presented it. Second, the liability of an express company is different from that of a railroad common carrier of goods. An express company belongs to that class of carriers who undertake to make a personal delivery of the goods to the consignee at his residence or place of business, and are held to great strictness in the performance of that duty. (4 R. C. L., sec. 281, p. 826.) This was the rule at common law as to all carriers of goods by land, but when railroads came into existence a modification of this rule was necessitated by the impracticability of actual personal delivery by them, and, hence, a deposit of the goods in the carrier's warehouse, or such a deposit with notice to the consignee, was made a substitute for the actual delivery required by the common law. (4 R. C. L., sec. 220, p. 752; sec. 278, p. 823 *et seq.*) This modification was recognized in the early case in this State of *Porter v. Chicago & R. I. R. Co.*, 20 Ill. 408, where it was held that "carriers by railway are neither bound to deliver to the consignee personally, or to give

254    APPELLATE COURTS OF ILLINOIS.

Phillipson & Co. v. Grand Trunk W. Ry. Co., 238 Ill. App. 251.

notice of the arrival of the goods, to discharge the liability of common carrier," but that the duty of such a carrier, and therefore its liability as an insurer of the goods, ceases as soon as the goods are taken from the cars and safely stored in defendant's freight depot or warehouse. Thereafter its liability is that of a warehouseman only. Speaking of the business of railroads, the court said in that case: "This mode of transportation is so essentially different from that by wagons and other vehicles, that a delivery to the consignee, at his place of business or residence, would be unadapted to their nature and the course of business by which they exist." In *Illinois Cent. R. Co. v. Carter*, 165 Ill. 570, 575, it was said: "It is well settled that the duty of a railroad company as a common carrier terminates when it has carried the goods to their destination and there placed them in its own safe depot or other warehouse. The cases in this court so holding are cited in *Gregg v. Illinois Cent. R. Co.*, 147 Ill. 550. Nor is notice to the consignee of the arrival or storage necessary to terminate liability as a carrier, but upon warehousing the liability is at once changed to that of a warehouseman." To the same effect are the later cases of *Gratiot St. Warehouse Co. v. St. Louis, A. & T. H. R. Co.*, 221 Ill. 418, 425, and *Schumacher v. Chicago & N. W. Ry. Co.*, 207 Ill. 199, 207.

It appears from the evidence in this case that the goods in question had been unloaded from the cars and deposited in defendant's freight house. It also appears that the notice sent by defendant to the plaintiff stated that the goods would remain there at the risk of the consignee, and (inferentially) that if signed by the consignee, the notice would constitute an order for the delivery of the goods to the person presenting the same.

Under the circumstances, it cannot be held that defendant's liability was that of an insurer; and there

is no evidence tending to prove that defendant was guilty of any negligent breach of its duty as warehouseman. Such being the case, the judgment will be reversed without remanding.

*Reversed.*

BARNES, P. J., and GRIDLEY, J., concur.