## KEYSTONE MOTOR FREIGHT LINES v. BRANNON–SIGNAIGO CIGAR CO.
### et al.
### No. 9502.

Circuit Court of Appeals, Fifth Circuit.

Nov. 29, 1940.

———◇———

C. J. Shaeffer, of Dallas, Tex., for appellant.

Nelson Scurlock, of Fort Worth, Tex., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment holding the Keystone Motor Freight Lines liable, as a connecting common carrier for hire, for the value of a shipment of cigars which was stolen from it, due to no negligence on its part, before delivery to the consignee. The Keystone contends that it was not a connecting or delivering carrier; that a tender of delivery had satisfied the "due diligence" burden upon it if it was a connecting or delivering carrier; and that the lower court committed reversible error in permitting the introduction of evidence to show local custom or usage in the business hours of the consignee when the bill of lading fixed the liability of the carrier in possession as at common law.

These facts were stipulated: Brannon-Signaigo Cigar Company, of Dallas, Texas, purchased a quantity of cigars from M. Trelles & Co., in New Orleans, which was

shipped over the lines of the transportation company owned by D. C. Hall. These parties frequently had similar transactions, and it was the usual custom to ship the tobacco on Friday and have it delivered on Saturday morning. On this occasion, the truck was delayed en route and did not reach the consignee's place of business until two o'clock Saturday afternoon. The driver found that the consignee had closed for the day, so he took the shipment to the dock of the Keystone Lines, and, by special contract, arranged to have the shipment stored there for delivery by the Keystone on Monday. When the Keystone opened for business on Monday, it was discovered that, without negligence on its part, the cigars had been stolen.

The Keystone Company and the Hall Company were common carriers which operated in interstate commerce under the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., and the Interstate Commerce Commission. Both were members of the Southwestern Motor Freight Bureau, and had on file tariffs providing for a division of the interline revenues. The Keystone, under a contract, regularly made deliveries for the Hall Company in the City of Dallas to certain consignees other than the Brannon-Signaigo Cigar Company, and the delivery rate charged under the special contract in this case was the same as the rate fixed for deliveries under the prior contract. The bill of lading covering the shipment of cigars subjected the carrier in possession of the property to liability as at common law for any loss thereof. Neither the bill of lading nor the freight bill contained the name of the Keystone Motor Freight Lines. When this suit was brought by the Cigar Company against Hall, the latter brought in the Keystone Company as a third party defendant. Hall ultimately paid the consignee for the loss, and claimed subrogation therefor against the Keystone.

In addition to the above stipulated facts, it was shown by testimony, over the objection of the third party defendant, that for many years it had been the custom of the consignee and all other comparable tobacco wholesalers in the city of Dallas to close at or before one p. m. on each Saturday; a sign announcing this practice was placed over the door of the consignee's place of business in 1927, and was still there and still legible on the date the delivery was attempted.

Appellant's liability is predicated upon the Hepburn Act, as amended, 49 U.S.C.A. § 20(11), which provides that any common carrier receiving property for transportation in interstate commerce, or any such common carrier so receiving property for transportation, or any carrier delivering said property so received and transported, shall be liable to the lawful holder of the bill of lading, or to any party entitled to recover thereon, for the full actual loss, damage, or injury to such property caused by it. For the purposes of the statute, the delivering carrier is defined as the carrier performing the line haul service nearest to the point of destination, and not a carrier performing merely a switching service at the point of destination.

We consider first the claim that a tender of delivery was made which reduced the liability of the Keystone from that of a carrier to that of a warehouseman. This contention is without merit. The mere arrival of goods at their destination does not reduce the liability of the carrier to that of a warehouseman where anything remains to be done by the carrier in order to effectuate a delivery. The owner is entitled to a reasonable opportunity to take or receive his property from the possession of the carrier after the transit is terminated.[1] We are cited and can find no instance where an attempted delivery by a common carrier of goods to a business at a time when the business is properly and regularly closed has been held to be a tender of delivery that would terminate the interstate character of the shipment and reduce the liability of the carrier.

Since a proper tender of delivery would have reduced the liability of the carrier to that of a warehouseman, the solution of the question of its status became necessary to a decision of the case, and depended wholly upon the circumstances surrounding the alleged tender. The question of business hours was germane to the issue, and the evidence proving the custom was proper. It was not testimony varying the terms of a written

[1] Hines v. First Guaranty State Bank, Tex.Civ.App., 228 S.W. 668; Id., Tex. Com.App., 243 S.W. 972; Missouri P. R. Co. v. Nevill, 60 Ark. 375, 30 S.W. 425, 28 L.R.A. 80, 46 Am.St.Rep. 208; Chicago & N. W. R. Co. v. Sawyer, 69 Ill. 285, 18 Am.Rep. 613; Ann. 97 Am.St. Rep. 88; 9 Am.Jur., Sec. 677 & 683.

instrument, but was entirely aliunde the bill of lading. Whether or not the carrier knew the closing practice, we think the fact that the business was so closed, and that the closing resulted from a business custom long followed, and was not an isolated act designed to defeat delivery on Saturday afternoon, is sufficient to defeat the claim of tender.

The heart of appellant's defense lies in its contention that it is not a connecting or delivering carrier; that, when the applicable provisions of the controlling statute are applied to the facts in this case, the character of the services it agreed to perform was comparable to a switching service rendered by a bailee for hire; that in such status it was liable only for its negligence. It is argued in support of this theory that the bill of lading did not mention its name; that, when the interstate shipment was begun, the consignor did not contemplate that the Keystone should perform any service incident to the delivery of the cigars; that it did not offer a pick-up and delivery service to the general public, but confined such service to a few contract accounts for the Hall Company and other transportation companies which did not include the consignee in this case; that there was no joint control exercised by both carriers over the shipment.

■ Having decided that the attempted delivery was not such delivery as would end the carrier's liability as a carrier, it follows that the goods were still in interstate commerce when they were deposited with appellant, who was a common carrier.[2] When appellant was asked to complete the delivery of the shipment, it objected on the ground that it had no contract with Hall for pick-up and delivery service to the particular consignee. When this objection had been satisfied by the special contract, and the service performed thereunder, appellant rendered a statement for pick-up and delivery service, and was paid an amount computed by the rates used in the pick-up and delivery tariff. As delivery had not been made, this pick-up and delivery service was a necessary link in the transportation.[3] Appellant's own actions indicate that, when the services were undertaken, it regarded them as pick-up and delivery services rather than switching services. The case relied upon by appellant is clearly distinguishable in that, in that case,[4] the railroad owned the line to which the switch was made, the parties regarded it as a switching service, the switching tariff governed the rate, and the service performed was that generally recognized to be a switching service.

■ The district court found as a fact that appellant was, in the circumstances of this case, a connecting and delivering carrier. This finding is supported by substantial evidence and must be upheld.[5]

■ The fact that the appellant was not a party to the bill of lading does not affect the validity of its terms between it and the carrier. By its terms, any carrier in possession was subjected to liability for loss, and it governed the entire transportation and fixed the obligations of all participating carriers in so far as its provisions were applicable and valid.[6] This liability could not be altered by any arrangements entered into between the original and delivering carriers.[7]

[2] Baltimore & Ohio Southwestern Railroad Co. v. Settle et al., 260 U.S. 166, 43 S.Ct. 28, 67 L.Ed. 189; Bachant v. Boston & M. R. Co., 187 Mass. 392, 73 N.E. 642, 105 Am.St.Rep. 408; 9 Am. Jur., Sec. 677.

[3] Leisy v. Hardin, 135 U.S. 100, 10 S. Ct. 681, 34 L.Ed. 128; Kelley v. Rhoads, 188 U.S. 1, 23 S.Ct. 259, 47 L.Ed. 359; United States v. Colorado & N. W. R. Co., 8 Cir., 157 F. 321, 15 L.R.A.,N.S., 167, 13 Ann.Cas. 893; Houston Direct Nav. Co. v. Ins. Co. of North America, 89 Tex. 1, 32 S.W. 889, 30 L.R.A. 713, 59 Am.St.Rep. 17.

[4] Missouri Pacific R. Co. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 45 S. Ct. 516, 69 L.Ed. 1000.

[5] Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664; Warren v. Keep, 155 U.S. 265, 15 S.Ct. 83, 39 L. Ed. 144; Guilford Construction Co. v. Biggs, 4 Cir., 102 F.2d 46; Rule 52, Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[6] Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; Missouri, Kansas & Texas Ry. Co. v. Ward, 244 U.S. 383, 37 S.Ct. 617, 61 L.Ed. 1213; Texas & Pacific Ry. Co. v. Leatherwood, 250 U.S. 478, 39 S.Ct. 517, 63 L.Ed. 1096; Great Northern Ry. Co. v. Galbreath Cattle Co., 271 U.S. 99, 46 S.Ct. 439, 70 L. Ed. 854; Galveston Wharf Co. v. Galveston, Harrisburg & San Antonio Ry. Co., 285 U.S. 127, 52 S.Ct. 342, 76 L.Ed. 659.

[7] Galveston Wharf Co. v. Galveston, Harrisburg & San Antonio Ry. Co., supra.

The Keystone Company, as the carrier in possession when the loss occurred, was liable under the bill of lading to any party entitled to recover thereon. Since the Hall Company paid the owner of the bill of lading for the loss, it is entitled to recover that amount from the Keystone.[8]

The district court so decided, and its judgment is affirmed.

[8] Cf. Oregon-Washington Railroad Nav. Co. v. McGinn, 258 U.S. 409, 42 S.Ct. 332, 66 L.Ed. 689.