OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY *v.* McGINN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 170. Argued March 17, 1922.—Decided April 10, 1922.

1. In the absence of a statute or special contract, the liability of a connecting carrier on a through route for the safety of freight begins when it receives it and is discharged by its delivery to and acceptance by the succeeding carrier or its authorized agent. P. 413.

2. The Cummins Amendment deals with and modifies the common-law liability only of the initial carrier, rendering that carrier liable for loss or damage of property committed to its care until delivered to the consignee, but leaving the relation of all connecting carriers, including the terminal carrier, to the shipper or consignee or to each other, entirely unaffected. P. 413.

3. Where a bill of lading for a through shipment of livestock provided that no carrier, except the initial carrier, should be liable for loss or injury not caused by it, *held* that the terminal carrier was not liable to the consignee for an injury on the line of an intermediate carrier. P. 412. *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, distinguished.

265 Fed. 81, reversed.

CERTIORARI to a judgment of the Circuit Court of Appeals reversing a judgment of the District Court adverse to the plaintiff and present respondent, in an action to recover from the present petitioner for damages to livestock while *in transitu.*

*Mr. William R. Harr,* with whom *Mr. A. C. Spencer, Mr. C. E. Cochran* and *Mr. John F. Reilly* were on the brief, for petitioner.

*Mr. R. L. Edmiston,* for respondent, submitted.

While neither the statute nor the bill of lading contract, in express words, makes the delivering carrier liable for all loss and damage to the shipment, as it does the receiving carrier, yet both necessarily imply this. And the contract, in this case, provides for notice, in case of loss, to be given " to the station agent at point of delivery or at point of origin," thus distinguishing the initial and delivering carriers from all others and making the delivering carrier equal to the initial carrier as a source to whom the owner or holder of the bill may look to claim and recover damage for loss or failure to deliver a shipment in good condition and in due time.

The 1916 amendment, c. 415, § 19, 39 Stat. 54, provides: " No right or title of a third person, unless enforced by legal process, shall be a defense to an action, brought by the consignee of a straight bill or by the holder of an order bill against the carrier for failure to deliver the goods on demand." Manifestly, this does not mean that a consignee in San Francisco, of goods in the hands of a carrier there which were shipped from New York, must make his demand and institute his action for relief against the initial carrier in a New York court. This would not be a just and adequate remedy for a consignee. In *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.,* 241 U. S. 190, this court said that " the aim was to establish unity of responsibility . . . for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the Federal Act, includes delivery."

This statutory " unity of responsibility " necessarily brings about " unity of contract " for each interstate ship-

ment, in which the consignee or holder is an important party and must be accorded a just and adequate remedy, from his standpoint.

MR. JUSTICE CLARKE delivered the opinion of the court.

The respondent shipped two carloads of horses from Grand Island, Nebraska, to Spokane, Washington, for which the initial carrier, the Union Pacific Railroad Company, issued a through bill of lading, in the form of the customary livestock contract, and routed the shipment over its own lines to Granger, Wyoming, thence over the line of the Oregon Short Line Railroad Company to Huntington, Oregon, and thence over the lines of petitioner to Spokane, Washington.

While in transit the animals developed disease, which resulted in the death of several and in such condition of the others that they were delivered to the shipper-consignee on the line of the petitioner before reaching the destination to which they were billed. The illness is alleged to have been caused by the stock having been given unwholesome food and water at Pocatello, Idaho, a station on the line of the intermediate carrier, the Oregon Short Line Railroad Company.

This suit to recover damages is against the delivering, the terminal, carrier, the allegation of the complaint, however, being that the unwholesome food and water were given to the stock while in transit over the route of the intermediate carrier, the Oregon Short Line Railroad Company. Thus, we have presented for decision the question, Is a terminal carrier liable to a shipper who, in this case, is also the consignee, for injury to horses caused by the negligence of a prior and independent carrier from which they were received?

The livestock contract, under which the shipment moved, contained the following provisions:

" 1. Except as otherwise provided by statute law, the carrier undertakes to transport said shipment only over its own line, and acts only as the agent of the shipper with respect to the portion of the route beyond its own line. No carrier shall be liable for damages for loss, death, injury or delay to said animals, or any thereof, not caused by it, but nothing contained in this contract shall be deemed to exempt the initial carrier in case of a through interstate transportation from any liability for loss, death, damage or injury caused by it or any common carrier, railroad or transportation company to which the livestock may be delivered under this contract."

It is plain that this paragraph was framed to comply with the requirements of the Cummins Amendment to the Carmack Amendment to the Interstate Commerce Act (c. 3591, § 20, 34 Stat. 593, 595; c. 176, 38 Stat. 1196), but, except as therein provided, the initial carrier limits its undertaking to its own line, declares that it acts only as the agent of the shipper with respect to the route beyond its own line, and the express contract is that " no carrier shall be liable for damages for loss, death, injury or delay to said animals, or any thereof, not caused by it."

A verdict was rendered in favor of the shipper-consignee, subject to the court's action on a question reserved by stipulation of the parties; and the court, acting thereunder, set aside the verdict and rendered judgment for the defendant. The Circuit Court of Appeals reversed the District Court and held that *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.,* 241 U. S. 190, required that under the Carmack (now Cummins) Amendment, the terminal carrier should be bound by the contract of the initial carrier to deliver, precisely as the initial carrier is bound, and was therefore liable for any loss or damage to the property that had been occasioned in transit through the conduct of any of the carriers.

In this we think the Circuit Court of Appeals fell into error.

The settled federal rule is that, in the absence of statute, or special contract, each connecting carrier on a through route is bound only to safely carry over its own line and safely deliver to the next connecting carrier, *Myrick* v. *Michigan Central R. R. Co.,* 107 U. S. 102, 107; *Railroad Co.* v. *Manufacturing Co.,* 16 Wall. 318, 324, and the liability of a connecting carrier for the safety of property delivered to it for transportation, commences when it is received and is discharged by its delivery to and acceptance by a succeeding carrier, or its authorized agent. *Pratt* v. *Railway Co.,* 95 U. S. 43.

The Cummins Amendment deals with and modifies the common-law liability only of the initial carrier. It renders that carrier liable for loss or damage to the property committed to its care throughout the entire route by which it is billed until delivered to the consignee, but it leaves the relation of all connecting carriers, including the terminal carrier, to the shipper or consignee and to each other, entirely unaffected, (*Atlantic Coast Line R. R. Co.* v. *Riverside Mills,* 219 U. S. 186, 195, 196, 197; *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 511), and therefore their liability is as we have stated it unless modified by contract, and in this case, as we have seen, the livestock contract, under which the shipment moved, by expressly providing that "no carrier [other than the initial carrier] shall be liable for damages for loss, death, injury or delay to said animals, or any thereof, not caused by it" leaves the common-law liability of the intermediate carrier entirely unaffected, just as the statute leaves it.

The *Blish Case, supra,* was against the terminal carrier, and one contention in that case was that under the Carmack (now Cummins) Amendment the shipper's remedy against the initial carrier was exclusive, even where the

default claimed was mis-delivery by the terminal carrier. In denying this, this court said:

" The connecting carrier is not relieved from liability by the Carmack [Cummins] Amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation and thus fixes the obligations of all participating carriers *to the extent that the terms of the bill of lading are applicable and valid.*"

We have seen that the Amendment did not alter the common-law liability of other than the initial carrier, and in this case the " applicable and valid " terms of the bill of lading expressly negative liability of any connecting carrier for damage not caused by it.

The other contention in the *Blish Case, supra,* was that the action was barred because notice of claim, in writing, had not been given within the time required by the bill of lading.

In the discussion of this question this court used the language following, by which the Circuit Court of Appeals was misled:

" When it [the initial carrier] inserts in its bill of lading a provision requiring reasonable notice of claims ' in case of failure to make delivery ' the fair meaning of the stipulation is that it includes all cases of such failure, as well those due to misdelivery as those due to the loss of the goods.  But the provision in question is not to be construed in one way with respect to the initial carrier and in another with respect to the connecting or terminal carrier.  As we have said, the latter takes the goods under the bill of lading issued by the initial carrier, and its obligations are measured by its terms;  . . .  and if the clause must be deemed to cover a case of misdelivery when the action is brought against the initial carrier, it must equally have that effect in the case of the terminal

carrier which in the contemplation of the parties was to make the delivery."

From this language the Circuit Court of Appeals concludes, that under the Amendment the terminal carrier is bound, by the bill of lading and the contract of the initial carrier, to deliver as the initial carrier is bound and is therefore liable for any loss or damage to the property which has been occasioned through the conduct of any of the carriers while in transit, and this led the court to the holding that the terminal carrier was liable for the loss and injury " although occasioned while in transit over the Oregon Short Line."

We think the Circuit Court of Appeals misinterpreted the only relevant expression in the above quotation from the language by this court, viz: The terminal carrier " takes the goods under the bill of lading issued by the initial carrier, and its obligations are measured by its terms; . . . and if the clause must be deemed to cover a case of misdelivery when the action is brought against the initial carrier, it must equally have that effect in the case of the terminal carrier which in the contemplation of the parties was to make the delivery."

What was decided in the *Blish Case* was that the terminal carrier was liable for failure to make delivery, just as the initial carrier would have been if it had been sued for mis-delivery, because by the terms of the bill of lading each was under obligation to make final delivery. The suit before us is not for mis-delivery or other fault of the carrier sued, but for the fault, as alleged, of a prior connecting carrier. In express terms the bill of lading we have here declares that no carrier shall be liable for loss or damage not caused by it, and, therefore, the statute not providing otherwise, the petitioner cannot be liable for the damage alleged to have been caused before the stock reached its line.

The Carmack and Cummins Amendments were enacted to enable the holder of a bill of lading to sue the initial carrier for any loss or damage to property suffered on any part of a through route, and thereby to relieve him from the necessity of searching out and proving a case against a terminal or intermediate carrier. 219 U. S. 186, *supra*, p. 200. Having regard to the customary methods of doing a through business in this country it may have been important to have given like rights against others of connecting carriers, but plainly, either from design or accident, the terms of the Amendment limit its application to the initial carrier.

We think that the Circuit Court of Appeals was mistaken in its interpretation of the language used in the *Blish Case* opinion, and its judgment must be reversed and the judgment of the District Court affirmed.

*Reversed.*