## SCHOONMAKER v. CLARDY et al.
### (Nos. 268–3493.)

(Commission of Appeals of Texas, Section B. Oct. 18, 1922.)

1. Pleading ⊂⇒252(2)—Amended petition supersedes previous petition concerning subject-matter put in issue.

Since an amended petition supersedes the previous petition, only the title to land embraced in the amended petition is put in issue.

2. Limitation of actions ⊂⇒127(12)—Where petition fails to describe land, limitation runs against adverse possession until proper land description appears in amended petition.

Where original and prior amended petitions failed to describe land in adverse possession, the limitation against recovery of such land ran to the filing of an amended petition embracing the lands.

3. Adverse possession ⊂⇒114(1)—Issue held for jury.

Where testimony tending to show adverse possession under the 10-year statute was contradicted, the issue was for the jury.

4. Depositions ⊂⇒96—Improperly excluded where deponent sufficiently identified land in controversy, though interrogatories were based on field notes of other land described in petition before amendment.

Although interrogatories in depositions related to land described by field notes, of a tract other than that in controversy, which was later correctly described in the petition as amended on the trial, deponent's testimony concerning possession prior to plaintiff's acquisition of the land was improperly excluded, where deponent was familiar with former owners and landmarks showing location, since the identity of the subject-matter was better shown by these facts than by the field notes.

5. Appeal and error ⊂⇒499(3)—Bill of exceptions relating to exclusion of testimony on deponent's objection taken as referring to general objection.

Bill of exceptions failing to disclose particular objections, where relating to exclusion of competent and material testimony, will be taken as referring to opponent's general objection.

6. Depositions ⊂⇒88—Entire deposition not inadmissible merely because deponent stated part was upon hearsay.

Where material parts of a deposition related to ownership and location of land identified

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by landmarks with which deponent was personally familar, the deponent's mere statement that some parts of his testimony might be hearsay did not warrant exclusion of the entire deposition.

Appeal from Court of Civil Appeals of Eighth Supreme Judicial District.

Action in trespass to try title by W. F. Schoonmaker against Allie D. Clardy and others. Judgment for defendants was affirmed by the Court of Civil Appeals (218 S. W. 1112), and plaintiff appeals. Judgment of trial court and Court of Civil Appeals reversed, and cause remanded to the former court for new trial.

Chas. Owen, M. M. Winningham, Jno. F. Weeks, and C. L. Galloway, all of El Paso, for appellant.

Turney, Burges, Culwell, Holliday & Pollard and Davis & Goggin, all of El Paso, for appellees.

McCLENDON, P. J. This was an action in trespass to try title, in which plaintiff below, W. F. Schoonmaker, sought to recover of defendants below, Allie D. Clardy and others, a tract of land in El Paso county. The Court of Civil Appeals affirmed a judgment of the trial court rendered in favor of defendants upon a directed verdict. 218 S. W. 1112.

There are two theories upon either or both of which defendants contend that the judgment of the trial courts should be sustained:

1. That defendants were entitled to recover as a matter of law upon a showing of adverse possession of ten years between the date of the filing of the original petition in 1908 and the filing of the trial amendment to the second amended original petition in 1919.

2. That there was no reversible error in excluding portions of the depositions of the witness Lowe and in sustaining a motion to strike out the entire depositions of four Mexican witnesses; and without this testimony plaintiff failed to establish a claim to the land, sufficient to sustain an action of trespass to try title.

The first and second amended original petitions, which were filed in 1917 and 1919 respectively, describe a tract of land whose initial (northwest) corner is due south from the northeast corner of survey No. 11. The trial amendment places this corner due south from the northwest corner of No. 11. This trial amendment shifts the land to a position entirely west of the tract sued for in the first and second amendments, with the possible exception of a narrow overlapping strip. There are no calls in the description in the two amended petitions which would in any way identify the land sued for except the initial call for the northwest corner, which is placed due south of the N. E. corner of No. 11.

[1, 2] Under our system of pleading, an amended petition entirely supersedes the previous petition of which it is an amendment. When, therefore, the first amended original petition was filed, the original petition was abandoned, and only the title to such land as was embraced in the amended pleading was put in issue. When the trial amendment was filed, the cause of action asserted by plaintiff was a claim of title to a tract of land practically wholly west of the tract embraced in the two amended petitions. This was a new cause of action to the extent that the two tracts did not overlap, and clearly to that extent limitation would run up to the filing of the trial amendment.

[3] The evidence, however, will not support a directed verdict for defendants upon the theory of adverse possession under the 10-year statute prior to the filing of the trial amendment. There was ample testimony tending to show such possession, but it was not without contradiction, and the issue thus raised was one of fact for a jury, and not of law for the court.

[4] The Court of Civil Appeals upheld the action of the trial court in excluding parts of the deposition of Lowe and in striking out the entire depositions of the four Mexican witnesses upon several grounds. We will consider the issues thus presented in somewhat different order from that adopted by the Court of Civil Appeals.

It was held by that court that the testimony thus excluded or stricken out was based upon interrogatories in which the land sued for was described by the field notes given in the first amended petition, which was an entirely different tract of land from that described in the trial amendment. The question thus presented is one solely of identity of the subject-matter of the several witnesses' testimony.

In order to a clear understanding of this issue, a brief statement of the case made by plaintiff, independently of the testimony excluded or stricken out, is necessary. The evidence is in parts obscure, as is usual in a case in which the witnesses are testifying from maps and plats; and in some respects the testimony may be conflicting. But a careful review of the entire statement of facts will, we believe, support the following conclusions.

About the year 1854 when the Texas grants (which adjoined each other and were located respectively from east to west as Nos. 7, 8, 11, and 12) were surveyed, and which called for the Rio Grande river as their south boundary, the river was fairly coincident with the north line of the land in suit, and this land was therefore in the republic of Mexico. Between 1854 and 1906 the river,

by one or more sudden changes, occupied a bed some 2,000 or more varas further south and at a place which would form the south boundary of the land in suit. In 1906 plaintiff acquired his claim to the land by two deeds. One of these deeds was executed by Felix Lucero and wife, and the other by Placido Zambrano. The Lucero deed was in evidence, but the Zambrano deed had been lost. At the time of plaintiff's purchase, the land was surveyed by Carrascosa, who appears to have been a competent Mexican engineer residing in El Paso. He had been familiar with the land for many years and had drawn several deeds to portions of the land whereby title was acquired by Zambrano. He drew the two deeds under which plaintiff claimed. Without going into details, we think the testimony of Carrascosa substantially identifies the land claimed by Lucero and Zambrano and embodied in the deeds to plaintiff, as the same land described in the trial amendment. Lowe acted for plaintiff at or shortly after the purchase, and his testimony is also sufficient to warrant the conclusion that the land which Lucero and Zambrano claimed and deeded to plaintiff was the same as that sued for in the trial amendment. Lowe examined the Mexican title, and from it concluded that plaintiff acquired good title under the deeds. He also testified with reference to a map made by one Montijo, which placed the land sued for south of survey No. 11, and substantially identified the Montijo survey with that made by Carrascosa. The latter testified that plaintiff's grantors had been in possession of their respective tracts and had cultivated portions of it a number of years.

Several of the witnesses refer to an old island which was intersected by the north line of the land in suit, and to some high ground with large cottonwood trees growing upon it at the southern extremity of the land just north of the river.

An old Mexican church, San Lorenzo, is shown on the Montijo map some 2,000 varas south of the river. This church, according to this map, was slightly to the east of a projection of the east line of survey No. 11.

The excluded testimony of Lowe was to the effect that, when he first examined the land, the Zambranos, its then owners, had planted and growing upon it quite a number of acres; that he helped survey the land and he pointed out a number of natural objects in connection with this survey. He states that the island was plainly visible, and he identified the land which he helped survey at the time plaintiff bought as that delineated upon the map made by Montijo. He also testified that to his knowledge defendants had not been in possession of this land up to 1908 when he left El Paso, and that the possession of the Zambranos was transferred direct to plaintiff in his presence. The Montijo map, which was introduced in evidence, locates the land in suit as in the trial amendment, placing it south of survey No. 11. It is to be noted that the interrogatories propounded to this witness do not attempt to describe the land by metes and bounds, but merely refer to it as about 117 acres between the Rio Grande river as it now runs and the old bed of the river as it ran prior to 1898, and "this tract of land is at the south end of surveys 11 and 12."

The depositions of the four Mexican witnesses, Placido Zambrano, the grantor in the lost deed, his son, Jose La Luz Zambrano, Ramon Gomez, and Luz Lucero were taken upon the same direct interrogatories to each. The cross-interrogatories are not embodied in the bill of exceptions.

In direct interrogatory No. 6 it is stated that the land in controversy lies opposite the old church on the American side in a northerly direction and abuts on surveys Nos. 10 and 11, and is the same land sold by Felix Lucero and Placido Zambrano to W. F. Schoonmaker in 1906. The seventh direct interrogatory states that the land in controversy is a tract of land more particularly described as follows: Then follows the description in the first amended petition, giving the initial corner as being south from the northeast corner of survey No. 11.

Without going into particular details, the testimony of these witnesses was to the effect that they knew the lands in question; that these lands had been occupied a number of years by the respective grantors and those under whom they claimed. The Zambrano lands had been in possession of the elder Zambrano and cultivated by him and his son for a period of 40 years, before the sale to plaintiff; and the Lucero lands had been likewise held and cultivated for a period of about 15 years. These witnesses expressed familiar knowledge of the old church and of the high ground near the river, and it is perfectly apparent from their answers that they were testifying concerning the very land which was surveyed by Carrascosa and conveyed to plaintiff. It is therefore evident that the objection to this testimony to the effect that it referred to land described in the field notes of the first amended petition is not tenable. It is hardly to be supposed that these witnesses could identify the lands merely from the field notes, and as this objection to their testimony addresses itself solely to a question of identity of the subject-matter of the witnesses' evidence, we think it cannot be sustained. In any event it would be manifestly improper to exclude the testimony upon this ground as a matter of law.

[5] The Court of Civil Appeals further held that the action of the trial court in excluding this testimony could not be reviewed because the bills of exceptions failed to disclose the objections made to its introduction. This holding is not in accord with that of

the Supreme Court in the case of Waller v. Leonard, 89 Tex. 507, 35 S. W. 1045, where the question presented was in principle precisely the question presented here. Here, as in that case, there can be no question as to the competency and materiality of the testimony excluded. The following concise statement embodies the holding of the court in this regard:

"We are of opinion that the bill of exceptions should be taken as stating the very objection made by plaintiff to the question, and that none other was made. If this be true, the plaintiff only made a general objection to the question, which would only be good in case the question was not calculated to elicit competent and material testimony, and would not reach the form of the question, such as that it was leading. We do not see how the defendant, in tendering his bill to the court, could be required to state any more than he did; for, having stated a general objection as having been made by plaintiff to the question and sustained by the court, the presumption is that that is what really occurred on the trial, and it would have been improper for him to have undertaken to put in other objections as having been made and sustained, when probably such was not the case. If plaintiff intended to rely on an objection to the form of the question, as that it was leading, he should have made such special objection on the trial, so that defendant would have had an opportunity to change the form so as to avoid the objection, and should also have seen that such special objection was included in the bill of exceptions, if he wished to urge it on appeal as a justification of the ruling of the trial court in excluding competent and material testimony. 1 Thompson on Trials, §§ 703, 704. We are of the opinion that the court erred in sustaining the objection stated to the question asked and excluding the evidence offered, as stated in the bill of exceptions."

[6] Still a third ground upon which the Court of Civil Appeals upheld the trial court's ruling was that parts of the testimony excluded were hearsay and conclusions of the witnesses. Upon this subject we need only say that, after a very careful examination of the depositions, we find nothing to indicate that the material portions of the evidence bearing upon the possession, occupancy, and use of the premises by the several owners and the position of the river at the different dates is manifestly based upon the personal knowledge of the witnesses testifying. The only parts of the testimony which raise any issue as to its hearsay character are found in the answers of the several witnesses to cross-interrogatory No. 2. As stated above, the cross-interrogatories are not embodied in the bill of exceptions. The witnesses Gomez, Lucero, and the elder Zambrano, each testify pointedly that their evidence is not based upon hearsay. In the answer of the younger Zambrano he says: "Some parts may be hearsay, but I know the land and worked on it as I have stated." We hardly think this statement of the witness would warrant the exclusion of his entire deposition.

We think the trial court committed error in its ruling upon the testimony in question and in directing a verdict for defendants.

We therefore conclude that the judgments of the trial court and Court of Civil Appeals should be reversed, and the cause remanded to the former for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.