**DAVIS, Federal Agent of Railroads, v. BENSON.**

No. 12557—Opinion Filed Dec. 4, 1923.

Rehearing Denied Dec. 9, 1924.

**Railroads — Federal Control — Recovery Against Connecting Carrier.**

The legal rights of persons having dealings with railroads under federal control were not enlarged by subdivision E of sec-

tion 210, of the Transportation Act of February 28, 1920, so as to give the shipper a right to recover against the Director General in control of one system of railroads for damages suffered on another system where such recovery could not have been had prior to federal control.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by L. E. Benson against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

C. O. Blake, W. R. Bleakmore, A. T. Boys, and W. F. Collins, for plaintiff in error.

Walter & Hilpirt, for defendant in error.

Opinion by RAY, C. This is an action against the Director General of Railroads for damages suffered in the transportation and handling of six car-loads of cattle, consisting of 294 head, from Clovis, N. M., to Oklahoma City. A fair statement of the case is contained in the brief of defendant in error, plaintiff below, as follows:

"The particular acts of negligence causing the damage as alleged in the petition, p. 2-3, record, were delay, rough handling, failure to bed cars and erroneously unloading and holding over shipment at Amarillo, Texas.

"The shipment passed over the A., T. & S. F. Railroad from Clovis to Amarillo, the Rock Island system from Amarillo to Oklahoma City, the Texas end of which is called the C., R. I. & Gulf and the Oklahoma part, the C., R. I. & Pacific—the former name being used in Texas, because of Texas laws requiring separate incorporation in that state, and was delivered by a short line at Oklahoma City, called the "Belt Line," which is operated by the Missouri, Kansas & Texas Railroad, all of these railroads being under goverment control and operation at the time. The petition was filed December 22, 1919."

The verdict was:

"***For the plaintiff and fix the amount of his recovery at $500 as against John Barton Payne as agent under Transportation Act, 1920 for C., R. I. & P. Ry. Co. and for said agent as such agent of the A., T. & S. F. Ry. Co."

A remittitur was filed for $225 and judgment entered for $275, from which the Director General and Agent for Railways appeals and contends that it was error to enter judgment against him as Director General in charge of the Chicago, Rock Island & Pacific Railroad for injuries suffered on the Chicago, Rock Island & Gulf Railroad, and relies upon Missouri Pacific Railway Co. v. Ault, 256 U. S. 554.

The plaintiff in his petition alleged that the Santa Fe and Rock Island & Pacific were connecting carriers and that the latter road received the cattle at Amarillo, Texas. The undisputed evidence is that the Rock Island & Gulf was an intermediate carrier and received the cattle at Amarillo and delivered to the Rock Island & Pacific at the Oklahoma-Texas line. All the injuries suffered by reason of delay, failure to bed the cars, unloading, and holding over, were suffered at Amarillo, Tex., while on the Rock Island & Gulf. The only evidence of damage occurring on the Rock Island & Pacific was that there was one bump of the cars near Clinton which threw the plaintiff (who was in charge of the shipment) from a side seat in the caboose to the floor, and a number of the cattle were down in the car when they were unloaded. The principal injury complained of was at Amarillo, Tex., after the cattle had been received by the defendant as Director General in charge of the Chicago, Rock Island & Gulf Railroad. The plaintiff testified that after the train had been made up at Amarillo for transportation to Oklahoma City the agent at that place directed that the cattle be unloaded; that he, the plaintiff, protested against unloading and demanded that they be shipped out at once so they could reach Oklahoma City within the time limit of 36 hours from Clovis to Oklahoma City, and offered to sign an agreement waiving any claim for damages if the agent would permit the shipment to go without unloading. He testified that they were unloaded all but four head which were down in the car and refused to get up; that they were held there in the pens something over 24 hours and reloaded; that, in reloading, the four head that had been left in the cars were forced out, and, because of their weakened condition, were not reloaded, but left at Amarillo. He testified that if shipment had been direct without unloading, in his opinion, the four head that were left at Amarillo would have reached Oklahoma City alive.

The Director General requested the following instructions, which were refused:

"You are instructed that the undisputed evidence is to the effect that the railroad of the Chicago, Rock Island & Pacific Railway Company connects with that of the Chicago, Rock Island & Gulf at a point on the state line between the states of Oklahoma and Texas, at which place the shipment of cattle involved in this action was first received by the Director General of Railroads in charge of the Chicago, Rock Island & Pacific Railroad, and that the defendant herein, John Barton Payne, as Agent and successor in office of the then Director General of Railroads in

charge of said Chicago, Rock Island & Pacific Railroad is liable only for loss or damage to said shipment, if any there was, which you may find by a fair preponderance of the evidence occurred between the Texas-Oklahoma line and Oklahoma City.

"You are instructed that the defendant, as Agent and successor in office of the former Director General of Railroads in charge of the Chicago, Rock Island & Pacific Railroad could in no event be held liable in damages to plaintiff for any alleged improper rough handling of the cattle of plaintiff save during the time said cattle were being trasported from the Texas-Oklahoma state line to Oklahoma City and before the same were delivered to the Missouri, Kansas & Texas Railroad Company at the latter place."

In the Ault Case, above referred to, the court said;

"The President took over the physical properties, the transportation systems and placed them under a single directing head; but he took them over as entities and they were always dealt with as such. Bull. No. 4, p. 113. Each system was required to file its own tariffs. General Order No. 7, Bull. 4, p. 151. Each was required to take an inventory of its materials and supplies. General Order No. 10, Id. p. 170. Each federal treasurer was to deal with the finances of a single system; his bank account was to be designated (Name of Railroad), Federal Account. General Order No. 37, Id. p. 313. Each of 165 systems was named individually in the order promulgating the wage awards of the Railroad Wage Commission. General Order No. 27, Id. pp. 198, 200. And throughout the orders and circulars there are many such expressions as 'two or more railroads or boat lines under federal control.' See General Order No. 11, Id. p. 170. It is this conception of a transportation system as an entity which dominates section 10 of the act. The systems are regarded much as ships are regarded in admiralty. They are dealt with as active responsible parties answerable for their own wrongs. But since levy or execution upon their property was precluded as inconsistent with the government's needs, the liability of the transportation system was to be enforced by allowing suit to be brought against whoever, as the party operating the same, was legally responsible under existing law, although it were the government."

On the other hand, it is contended that it is immaterial on which carrier's line the damage may have occurred, owing to the fact that there is but one proper defendant and he operating the whole system of transportation. In support of that contention he cites subdivisions D and E of section 206, and subdivision E of section 210 of the Transportation Act of February 28, 1920, as follows:

Sec. 206 (D): "Actions, suits, proceedings and reparation claims of the character above described, pending at the termination of federal control, shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by the President, under subdivision (A)."

Sec. 206 (E): "Final judgments, decrees and awards in actions, suits, proceedings or reparation claims, of the character above described, rendered against the agent designated by the President under subdivision (A) shall be promptly paid out of the revolving fund created by section 210."

Sec. 210 (E): "There is hereby appropriated out of any moneys in the treasury not otherwise appropriated, the sum of $300,000,000 which shall be used as a revolving fund for the purpose of making the loans provided for in this section and for paying the judgments, decrees and awards referred to in subdivision (E) of section 206."

The foregoing states, we think, the contentions of the parties.

In the Ault Case, the court, in pointing out the purpose and effect upon private rights of federal control, said:

"The situation was analogous to that which would exist if there were a general receivership of each transporation system. Operation was to be continued as theretofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing laws, but the property in the hands of the President for war purposes was not to be disturbed. With that exception the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control.".

While the railroads were taken over for one purpose and operated under one control, they were taken over as separate systems and dealt with as separate systems. By General Order No. 27, the Chicago, Rock Island & Pacific Railway and the Chicago, Rock Island & Gulf Railway were designated as separate systems and presented a situation "analogous to that which would exist if there were a general receivership of each transportation system," and the "substantial legal rights of persons having dealings with carriers were not to be affected by the change of control." Then, what of the rights of the shipper, whose legal rights were not affected by the change of control? In such circumstances, in the absence of federal control, he could not recover against one system for damages suffered on another system. C.R.I. & P. Ry. Co. et al. v. Harrington et al., 44 Okla. 41,143 Pac. 325: Oregon, Washington R. R. & Navigation Co. v. McGinn, 258 U. S. 409, 66 L. Ed. 489. But it is not contended

that the Rock Island & Pacific would be held for damages occurring on the Rock Island & Gulf, in the absence of federal control, but as the Director General was the proper defendant, regardless of which road or system of roads the damage occurred on, and as the judgment recovered must be paid out of the revolving fund created by the Transportation Act, it only involves a system of accounting on the part of the Director General, and, therefore, immaterial as to which road the injury occurred on. This contention is, in effect, that the rights of the shipper were enlarged by federal control of railroads, not by proclamation of the President, or order of the Director General, or by an act of Congress expressly so declaring, but by reason of a section of the Transportation Act creating a revolving fund out of which all judgments against the Director General were to be paid. No contention is made that even that act expressly enlarged the rights of the shipper, but that the act having provided that all judgments be paid out of one revolving fund created by that act, instead of out of the revolving funds maintained for the several systems as required by general orders under the previous acts, it can make no difference to the Director General. Such reasoning is not convincing. The manner or method of accounting between the Director General and the railroad companies is not for this court to determine. Prior to federal control recovery could not be had against one railroad company for injuries suffered on the road of another railroad company, and such right has not been given either by Act of Congress, proclamation of the President, or order of the Director General. Accepting the law as laid down by the Supreme Court of the United States in the Ault Case, and applying it to the facts of this case, the conclusion is irresistible that the plaintiff cannot recover against the Director General in charge of the Chicago, Rock Island & Pacific Railroad for injuries suffered on the Chicago, Rock Island & Gulf Railroad. We think the court erred in refusing to give the requested instructions.

The judgment should be reversed and remanded, with directions to grant the defendant a new trial.

By the Court: It is so ordered.

## On Rehearing.

PER CURIAM. The petition for rehearing herein is based solely upon the case of Davis, Agent, United States Railroad Administration, v. Alexander et al., 93 Okla. 159, 220 Pac. 358, wherein it was held that:

"1. The Director General of Railroads, while operating the railroads under federal control assumed by the President under Act Aug. 29, 1916, and the Federal Control Act of March 21, 1918 (Comp. St. 1918, Comp. St. Ann. S.pp. 1919, 3115 3-4 a-3115 3-4 p). operated the railroads as a single national system of transportation under a unified head or control, and not as separate companies or systems, and the Director General was responsible for damages sustained through the negligent operation of said railroads during federal control, regardless of what road or roads in the operation of which such negligence occurred, and without regard to the relation, affiliation, or association of said roads in their corporate capacity."

"2. Under Transportation Act 1920, an action against the federal agent of railroads for damages suffered from the operation of railroads under federal control is an action against the United States, and not against the railroads and service of process, within the venue provided by Transportation Act 1920 on the service agent for any of the railroads, gives jurisdiction over the federal agent as to all of the railroads, in the operation of which during federal control the damages complained of resulted."

There is an irreconcilable conflict in the two cases, but a re-examination of the authorities cited in both cases satisfies us that the holding in the case at bar is correct. Therefore, the opinion in Davis, Agent United States Railroad Administration, v. Alexander, supra, is expressly overruled, and the petition for rehearing herein is denied.