### ATCHISON, T. & S. F. RY. CO. et al. v. OHLHAUSEN. (No. 7347.)

(Court of Civil Appeals of Texas. San Antonio. April 29, 1925. Rehearing Denied May 13, 1925.)

1. Carriers ⬤⟾177(4)—Receivers of noninitial carrier of interstate shipment liable only for damages occasioned by their negligence.

Carriers other than initial carrier of interstate shipment are liable only for damages occasioned by their negligence, and not for injury resulting from acts of initial or intermediate carriers.

2. Carriers ⬤⟾219(4)—Intermediate carrier of interstate shipment not liable for delay of shipment received too late to permit delivery at time desired.

Intermediate carrier of interstate shipment of cattle, unloaded for feed, water, and rest, pursuant to U. S. Comp. St. §§ 8651–8654, is not liable for delay of cattle in reaching market, where cattle were received too late to permit delivery, in the exercise of ordinary diligence, on market on desired day.

3. Carriers ⬤⟾228(1)—Shipper accompanying movement of cattle had burden of showing asserted unreasonable delay.

Shipper, accompanying movement of interstate shipment of cattle, held to have burden of showing facts and circumstances from which the jury could base the finding as to whether the movement of the cattle was unnecessarily delayed, as claimed by the shipper, or whether the movement was reasonable.

4. Carriers ⬤⟾228(5)—Evidence held not to warrant verdict against intermediate carrier for damages for delay of stock shipment.

Evidence held not to show negligent delay by intermediate carrier of interstate stock shipment, nor to warrant verdict for shipper for damages.

Appeal from Tarrant County Court for Civil Cases; H. O. Gossett, Judge.

Action by C. M. Ohlhausen against the Atchison, Topeka & Santa Fé Railway Company and others. The action was dismissed as to first named defendant. From an adverse judgment, the receivers of the Texas & Pacific Railway Company appeal. Affirmed as to defendants other than the receivers,

and as to them judgment reversed and cause remanded for new trial.

Thompson, Barwise & Wharton and B. V. Thompson, all of Fort Worth, for appellants.

C. A. Wright, of Fort Worth, for appellee.

SMITH, J. This is a suit for alleged damage to a shipment of a carload of cattle via the Atchison, Topeka & Santa Fé Railway from Melrose, N. M., to Clovis, N. M.; from Clovis via the Panhandle & Santa Fé Railway to Sweetwater, Tex., and from Sweetwater to Fort Worth via the Texas & Pacific Railway, of which Lancaster and another are receivers. From Fort Worth they were moved to North Fort Worth, by undisclosed means, and sold on the market. The cattle were penned at noon, May 18, 1921, at Melrose, and loaded out of there at 9 p. m., same day. They arrived at Clovis, an undisclosed distance, at 3 a. m. May 19th, and left there between 10:30 and 11 a. m., same day. They arrived at Sweetwater, an undisclosed distance, about midnight the night of May 19th, but were not delivered by the Santa Fé to the Texas & Pacific until 5:30 or 8:30 the morning of May 20th. At that time the cattle had been confined in the cars from the time they were loaded at Melrose, 9 p. m., May 18th, to the time delivered to the Texas & Pacific at Sweetwater, 5:30 or 8:30 a. m., May 20th, or a period of from 33½ to 35½ hours. As the usual running time from Sweetwater to Fort Worth was 20 hours, it became necessary to unload the cattle at Sweetwater for feed, water, and rest in compliance with the federal statutes (U. S. Comp. St. §§ 8651–8654).

Accordingly, the cattle were unloaded by the Texas & Pacific at Sweetwater at 9:30 a. m., May 20th, for feed, water, and rest. The Texas & Pacific operated a regular stock train passing through Sweetwater around 11 o'clock in the morning, but the evidence is conclusive that the cattle could not possibly have been transferred to the stock pens, unloaded, held in those pens for five hours as required by the federal statutes, reloaded, and switched to the main line, in time to make the stock train that day. There was no evidence of the usual and customary time or from which a reasonable time could be inferred, in which to transfer the cattle to the stock pens and unload them, or to reload, transfer, and place them in a train for the forward movement. The only evidence which might relate to this transaction was contained in the testimony of appellee to the effect that the usual time of passing a shipment through a terminal was four hours, but this did not include the movement to and from stock pens, or feeding and watering, unloading, and reloading. The cattle were in fact reloaded at 1 a. m. and forwarded out of Sweetwater at 3:52 a. m., May

---

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

21st, on the first train after the passage of the stock train at 11 o'clock the previous morning. They arrived at Fort Worth about 8 o'clock that night, but it is not disclosed when they reached North Fort Worth, where they were held over Sunday and sold on Monday, May 23d. No complaint is made of the movement after leaving Sweetwater, but it is contended that by the unreasonableness of the delay at that point the cattle were caused to miss the market at North Fort Worth of May 21st, necessitating holding them over for the market of the 23d.

The Atchison, Topeka & Santa Fé, the initial carrier, was dismissed by appellee; the jury acquitted the Panhandle & Santa Fé, the intermediate carrier, and found against the receivers of the Texas & Pacific, the final carrier, upon the issue that the receivers unreasonably delayed the cattle.

[1, 2] The shipment being interstate in character, the receivers, not being the initial carrier, were liable only for such damages as were occasioned by their negligence; they were not liable for injury resulting from the acts of the initial and intermediate carriers. Ry. v. McGinn, 258 U. S. 409, 42 S. Ct. 332, 66 L. Ed. 689. So, unless the cattle in question were negligently delayed by the receivers, and such delays caused them to miss the market of May 21st, or efficiently concurred with the delays on the other lines to bring about that result, the receivers would not be liable. In other words, if the cattle were delivered to the receivers at Sweetwater too late under the particular circumstances to permit the receivers in the exercise of ordinary diligence to put the cattle on the desired market, then the receivers were not liable. There was no finding by the jury, nor any evidence to support a presumptive finding, that by the use of ordinary care the receivers could have delivered the cattle in time for that market. Therefore there was no basis for the judgment, which depended solely upon the affirmative of that issue.

[3, 4] It should be added that although appellee himself accompanied the cattle throughout their journey and testified at length in the case, his testimony was of no value in developing the controlling facts of the movement; and although he testified that during the preceding three or four years he had made 15 or 20 shipments from Melrose to Fort Worth and was "familiar with the usual and customary running time required for such movement," he did not testify, nor did any other witness except the receivers' trainmaster, as to what such usual and customary time was, or to any facts from which this ultimate fact could be inferred. The cattle were held in the pens at Melrose for 9 hours before they were loaded out of there, and were delayed 7 or 8 hours waiting for a train at Clovis; they were 27 hours in transit from Melrose to Sweetwater, but the distance between these points was not shown, nor was it shown that the specific delays at Melrose and Clovis were usual and customary or necessary. The cattle were held at Sweetwater 5½ or 8½ hours before delivery to the receivers; but no reason for the delay was shown, nor that it was not usual, customary, or necessary. The time occupied by the receivers in getting the cattle to the stock pens, in unloading, in feeding, watering and resting, in reloading, in getting them back in transit, was not shown to be beyond the usual, customary, or necessary time under the conditions existing at Sweetwater. As the shipper accompanied the movement, the burden was upon him to show facts and circumstances from which the court or jury could base a finding as to the reasonableness or unreasonableness of the movement. But he entirely failed to meet this burden, although he fully qualified for the purpose. On the other hand, the receivers' trainmaster testified, without objection from appellee, that the time of the movement by the receivers was usual, customary, and necessary under the conditions present.

The judgment in favor of the Atchison, Topeka & Santa Fé Company and the Panhandle & Santa Fé Company is not complained of and will be affirmed, but as to the receivers the judgment is reversed, and the cause remanded for a new trial.