**TEXAS & N. O. R. CO. et al. v. CONN et al.**

**No. 9431.**

Court of Civil Appeals of Texas. Galveston.
May 28, 1930.

Rehearing Denied June 12, 1930.

940

Baker, Botts, Parker & Garwood, Andrews, Streetman, Logue & Mobley, John T. Garrison, Arterbury & Coolidge, and C. E. Coolidge, all of Houston, for appellants.

John B. Warren, of Houston, for appellees.

PLEASANTS, C. J.

This is a suit by appellees to recover damages for injuries to cattle shipped by appellees over the defendant railroads from Camptown, Tex., to Fort Worth, Tex.

The following sufficient summary of the allegations of the petition is copied from appellees' brief:

"It was alleged that appellees (plaintiffs below) delivered the cattle to the initial carrier about 1 P. M. on November 21 1925, and that they were fat beef cattle ready for immediate slaughter, and that defendants 'were under the duty to handle them with ordinary care, and deliver them within a reasonable time, alleged to be 24 hours. That in violation of its duty under the contract the cattle were unloaded at Beaumont and confined in close pens for a period of 16 hours and then re-loaded and delivered at Fort Worth Stock Yards at about 1 P. M. on November 23, 1925, which was on Monday. Plaintiffs alleged that defendants handled the cattle in a rough, careless, and reckless manner in the unloading, re-loading, and transporting same, and when they reached their destination they were skinned, bruised, crippled, and shrunken, which greatly depreciated their market value. That three of them were dead, and six crippled, and the rest skinned and bruised. The plaintiffs alleged that by reason of their condition arising by reason of their being unloaded and their rough, careless, and reckless handling, and jostling in the cars and their failure to reach their destination on Sunday so they could fill with feed and water, their market value was greatly depreciated. Plaintiffs alleged their damages as being the difference between their market value in the condition in which they should have arrived and the market value in which they did arrive, which plaintiffs alleged to be the sum of $2506.48, and 6% interest thereon from November 23, 1925."

The defendants answered by general demurrer, special exceptions, general denial, and special pleas. The nature of the special exceptions and pleas pertinent to the questions discussed and determined in this opinion will be hereinafter shown. The general demurrer and special exceptions of defendants were overruled by the court, and, upon the conclusion of the evidence, the case was submitted to a jury upon special issues.

In response to the issues submitted to them, the jury found:

"(a) That the appellants did not fail to transport the shipment to Fort Worth within a reasonable time;

"(b) That the appellants did handle the cattle in a rough and careless manner, and that such handling was negligence and the proximate cause of their injury;

"(c) That the cars were not overloaded;

"(d) The damages were not proximately caused by the inherent vices, weaknesses, etc., of the cattle;

"(e) That the failure of the caretaker 'to attend' the cattle while en route from Jacksonville to Fort Worth was not a proximate cause of the damages;

"(f) That it was necessary, in the exercise of ordinary care, for the welfare of the cattle, for appellants to unload same at Beaumont;

"(g) That appellees have been damaged in the sum of $691.67, and were entitled to interest thereon at the rate of 6% per annum from November 23, 1925, until the date of the trial."

In accordance with this verdict judgment was rendered in favor of plaintiffs against the defendants.

■■ The following are the special exceptions to plaintiffs' petition which were overruled by the court:

"Defendants specially except to paragraphs 7, 8, 9 and 10 of plaintiffs' first amended original petition, in so far as said paragraphs contain allegations to the effect that these defendants handled the cattle in question in a rough, careless and reckless manner during transportation, unloading and re-loading of the same, in that:

"(a) Said allegations are vague and indefinite, and do not apprise these defendants in what manner they roughly, carelessly and recklessly handled the cattle, and at what point on the route from Camptown to Fort Worth such negligent acts were committed;

"(b) For the reason that said allegations are too general, insufficient to apprise these defendants of the facts the plaintiffs will submit as constituting rough, careless and reckless handling of said cattle, and where such acts were committed;

"(c) For the reason that said allegations are but conclusions of the pleader and do not set out any facts which would amount to or

might amount to negligent acts on the part of these defendants during transportation."

We think these exceptions should have been sustained. The petition shows upon its face that the shipment was en route for approximately 48 hours, and that it moved over the lines of four railroad companies for a distance of approximately 400 miles. The allegations of the petition give no information or intimation to the defendants of the facts upon which the allegations of "rough, careless and reckless handling of the cattle" are based, nor of the place along the route at which said alleged negligence occurred.

■ An essential requirement of proper pleading is that it must notify the opposite party of the facts relied on and expected to be proven to sustain the ground of recovery or defense asserted by the pleadings, and such facts must be alleged with the certainty that will enable the adverse party in the exercise of reasonable diligence to produce the evidence necessary to meet the allegations. Telegraph Company v. Mitchell, 91 Tex. 454, 44 S. W. 274, 40 L. R. A. 209, 66 Am. St. Rep. 906; Warren v. La Salle Co. (Tex. Civ. App.) 262 S. W. 527, 530.

It could hardly have been possible for the plaintiffs to have employed more general and indefinite terms in alleging the facts relied on to support their allegations of actionable negligence on the part of defendants in the performance of their contract for the transportation of these cattle.

The allegations of "rough, careless and reckless" handling of the cattle amount to little, if anything, more than a conclusion of the pleader, and, when we add to this that the petition wholly fails to allege the place or places along the 400-mile route at which such alleged "rough, careless and reckless handling" occurred, it seems clear to us that this pleading fails to give the defendants the notice they were entitled to have to properly prepare their defense, when they asked for such notice by their special exceptions. Ft. Worth & D. C. Ry. Co. v. James, 39 Tex. Civ. App. 408, 87 S. W. 730; Missouri, K. & T. Ry. Co. v. Garrett, 39 Tex. Civ. App. 246, 87 S. W. 172; Missouri Pac. Ry. Co. v. Hennessey, 75 Tex. 157, 12 S. W. 608; Hall v. Johnson (Tex. Civ. App.) 225 S. W. 1110.

■■ These allegations of the petition are sufficient against a general demurrer, and, if plaintiffs had been in position to meet the special exceptions by alleging they were unable to plead more definitely the acts of negligence relied on for recovery, the special exceptions might have been properly overruled, but no such answer was made to the exceptions, and the undisputed facts in the record show that plaintiffs had a caretaker for the cattle, who was furnished transportation by the defendants and accompanied the shipment from its place of origin to destination.

In these circumstances no presumption of negligence would arise from proof of the good condition of the cattle when received by the carrier and their injured condition when delivered at their destination, but it devolved upon plaintiffs to sufficiently allege and prove the acts of negligence relied on for recovery. Ry. Co. v. Ohlhausen (Tex. Civ. App.) 272 S. W. 224; Ry. Co. v. Southern Pine Lumber Co. (Tex. Civ. App.) 6 S.W.(2d) 418.

■ It may be conceded, as is earnestly insisted by appellees, that the evidence is sufficient to sustain the verdict of the jury that the defendants were negligent in the operation of their trains and that plaintiffs' cattle were injured as a proximate result of such negligence in a greater amount than was found by the jury, but these facts cannot cure the error of the court in not sustaining the special exceptions to the petition and requiring plaintiffs to inform the defendants of the acts or omissions of defendants' employees constituting the alleged negligence and the place at which such acts or omissions occurred. In the absence of this information in the pleading, defendants were placed under an unreasonable burden in procuring the evidence necessary to properly present their defense.

The record shows that the cars in which the cattle were shipped were transported over four different railroads by trains operated by four different crews, each crew consisting of a conductor, engineer, fireman and brakeman. In addition to this, the shipment was handled by two switching crews, one at Beaumont and one at Fort Worth, and by an unloading and reloading crew at Beaumont. Not being informed by the pleading at what place or on what road the alleged rough, careless, and reckless handling of the shipment occurred, to meet these general allegations with the testimony of all those having probable knowledge of the facts involved would have required appellants to have procured the attendance or taken the deposition of all the members of the various crews who operated these trains and handled these cattle.

No such burden can be properly placed upon a defendant when the plaintiff has sufficient knowledge of the facts to give the defendant definite information which would relieve him of such burden. This record well illustrates the injury which a defendant will often sustain by the failure of the plaintiff in his pleadings to inform the defendant as definitely as he may of the facts relied on to sustain his claim. The only evidence upon which the verdict for damages for injury to the cattle caused by the alleged "rough, careless and reckless handling" of the shipment was the testimony of the caretaker who went with the cattle that between Beaumont and Jacksonville and between Jacksonville and Fort Worth the train carrying the cars of cattle was frequently stopped and started with such

sudden and violent jerks and jars as to throw the cattle down, and that, when these cattle arrived at Fort Worth, "a lot of them were down in the cars, some of them were dead, and some were crippled." The only witnesses appellants had at the trial to refute this testimony as to the negligent handling of the train were the conductor in charge of the train from Beaumont to Jacksonville and the conductor in charge from Jacksonville to Fort Worth; each of these conductors testifying that there was no unnecessary or unusual stopping or starting of his train, and no unusual or unnecessary jerks or jars in stopping or starting it. If appellants could have had these witnesses corroborated by the testimony of the engineer, fireman, and brakeman on each of these trains, the finding of the jury upon this issue would probably have been different. If the exceptions to the petition had been sustained and the plaintiffs had been required to definitely inform appellants by their pleading of the facts constituting the alleged careless handling of the train, and the place or places at which it occurred, appellants' failure to produce the testimony of the other operatives of the train would have been their fault, and might reasonably justify the inference by the jury that the absent operatives of the train would not have corroborated the conductors.

We do not think that, in the absence of the information sought by the exceptions and which was within the knowledge of the plaintiffs, appellants were required to incur the expense of producing the testimony of all of the operatives of the trains of the four railroads that transported the cattle, or subject themselves to the damaging inference which the jury might have drawn from their failure to produce this testimony. This was the situation in which appellants were placed by the ruling of the court on their special exceptions.

The application of the rule of pleading invoked by appellants is not affected by the fact that the shipment in this case was under a through bill of lading, unless it be that such fact tends to accentuate the right of appellants to require plaintiffs to definitely allege the facts constituting the negligence charged in the petition, and the railroad on which such negligence occurred.

We know of no decision and can think of no sound or just reason which authorizes the application of a different rule of pleading in suits against a railroad company from that applicable in suits against any other defendant.

Defendants specially pleaded that the injury to plaintiffs' cattle during their transportation "was the direct result of the inherent vices, weaknesses and natural propensities of the animals." In support of this plea the defendants offered to prove by the witness L. Roberts, who inspected the cattle on their arrival at Fort Worth, that "these cattle were wild and when wild cattle are confined in a car they get scared much easier than gentle cattle. I have noticed several times the South Texas Brahmas. When they meet other trains, they will all crowd into one end of a car and crowd each other down on the floor. They are just so wild that anything scares them and they crowd from one end of the car to the other."

The undisputed evidence shows that these were Brahma cattle, and the offered testimony upon its face appears to us to have been relevant and admissible upon the defense pleaded by appellants and submitted to the jury. When this offered testimony is considered with the other testimony in the case showing that during the transportation of these cattle many trains passed the train on which they were being transported, and the further testimony of the conductors who testified for the defendants that there were no violent, unusual, or unnecessary jerks or jars to the train caused by the manner in which it was stopped and started along the route, it tends to support the pleaded defense that the injuries to the cattle by being thrown on the floor of the car and trampled upon was due to their natural propensities, and not to any negligent handling of the train by its operatives.

The only answer made by appellees to the assignment complaining of the ruling of the court refusing to admit the offered testimony is that the bill of exceptions taken to the ruling of the court fails to state the grounds of plaintiffs' objection to the testimony. This is no answer to the assignment. The bill of exceptions was approved by the appellees' attorney and the trial judge without any qualification, and, so far as this record shows, there was no specific ground stated in the objection made to the admission of the testimony. The evidence being prima facie admissible, appellants cannot be deprived of the benefit of having it considered by the jury because appellees' attorney failed to state the ground on which he objected to its admission. If there was any valid ground for excluding the testimony, it devolved upon appellees' attorney and the trial court to have it so appear by the bill of exceptions or be otherwise shown by the record.

If other errors are shown by the record, they are not deemed material nor such as are likely to occur upon another trial, and need not be discussed.

For the errors above pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

GRAVES, J. (dissenting).

When this judgment was docketed May 8, 1903, my understanding was that the reversal was being ordered only upon a majority conclusion that the special exceptions to appellees' petition should have been sustained, my

inability to concur in that holding being then entered. The dissent will therefore be limited to a simple recitation of the reason for that difference, at least until opportunity may be afforded for further consideration of the whole cause on rehearing, in the absence of instant time to go into the record touching the additional ground for its decision now (on May 28, 1930) stated in this court's filed opinion.

In addition to the quoted summary in the majority opinion, the appellees alleged that appellants own and operate lines of railway extending from Camptown in Newton county, the point of origin of this shipment, to Fort Worth, the point of destination, naming their included connecting lines between those two places, and that as shippers they contracted with themselves to make the shipment of the cattle a through one over these lines under the bills of lading so providing, with the further express information and stipulation that they were not to be stopped or unloaded en route for rest, feed, or water, for a period of 36 hours, being intended for immediate slaughter at Fort Worth. Then follow detailed averments of the violation of this, along with the other declared upon obligations of appellants, including one that the cattle should have arrived at destination within about 24 hours, of which the quotation by this court is only a general résumé. Paragraph 7, to 10, inclusive, to which the special exceptions were addressed, were these:

"Plaintiffs allege defendants handled the said cattle in a rough and careless manner, in the unloading and re-loading of the same, and in transporting same, and when they reached their destination they were skinned and bruised, and crippled, and shrunken, which greatly depreciated their market value. Plaintiffs allege that said cattle were fat beef cattle when delivered to the defendants, and if they had been handled with ordinary care and transported with reasonable diligence they would have been of the reasonable market value on Monday following their shipment of $5.00 per hundred pounds. Plaintiffs allege that by reason of being bruised, skinned, crippled and shrunken, arising by reason of their being unloaded, and their rough, careless, and reckless handling, and jostling in the cars, and their failure to reach their destination on Sunday, so they could fill with feed and water, their market value was greatly depreciated.

"Eighth. Plaintiffs allege that 74 head of such cattle were fat beef calves, of an average of 300 pounds each, all of which were in K. C. S. Car No. 30,310. Plaintiffs allege that if these calves had not been unloaded, and had been handled with ordinary care, and delivered at destination on Sunday, or within a reasonable time after their shipment, so they could eat and drink and be filled, they would have been of the average market value

at destination of $15.00 per head or $1,110.00; but by reason of being unloaded and reloaded, and handled in a rough and careless manner, they were bruised, and skinned and shrunken and depreciated in value, and their market value was only the sum of $777.70, a loss to plaintiffs on said calves of $332.50, for which they sue.

"Ninth. Plaintiffs allege that of the remaining 114 head of cattle, three were dead from rough, careless, and reckless handling and six were crippled, while in the care of the defendants, and the nine head had to be salvaged for the sum of $46.48; that the 114 head of cattle, when delivered to the defendants, were of the average market value of $35.00 per head, or a total market value of $3,990.00; that if said 114 head had been transported to destination with reasonable diligence and not unloaded, and had been handled with ordinary care, they would have been of the reasonable market value at destination of the sum of $3,990.00, but by reason of the failure of the defendants to transport such cattle with reasonable diligence, and to handle the same with ordinary care, and by reason of them being unloaded and confined in close pens at Beaumont, and handled in a rough, careless, and reckless manner, those that were not dead were bruised, skinned and shrunken, and their total market value was only the sum of $1,833.88, a loss to the plaintiffs on said 114 head of cattle of $2,156.12.

"Tenth. Plaintiffs allege that said 74 head of calves were of the reasonable market value at destination of the sum of $1,110.00, and the reasonable market value of the said 114 head of cattle at the point of destination was the sum of $3,990.00, and if said cattle had not been unloaded and had been transported and delivered at the point of destination, with reasonable diligence, and had not been handled in a rough, careless, and reckless manner, and had not been bruised, skinned and shrunken by reason of such careless and reckless handling, they would have been of the total market value at destination of $5,100.00, but in the condition in which they were in at the time of their delivery, at the point of destination, the said cattle were only of the reasonable market value of $2,611.52, an actual loss to the plaintiffs in the sum of $2,488.48, for which they sue, together with interest thereon at 6% per annum on said sum from November 23, 1925, to the time of trial, said interest being sued for by the plaintiffs as a part of their damages. Plaintiffs further allege that in order to get the delivery of said cattle, they were required to pay for the watering and feeding of the said cattle at Beaumont, Texas, in the sum of $18.00. Plaintiffs allege that said expense was incurred by the defendants in violation of their contract with the plaintiffs to transport and deliver the said cattle with rea-

sonable diligence at the point of destination, without being unloaded, and the plaintiffs are entitled to have the said sum of money returned, and for which they·sue."

To hold the trial court's failure to sustain the special exceptions set out in the other opinion to all these averments reversible error in the circumstances is to say, it seems to me, not only that appellants' specifically declared upon and unconditional contract to quickly and with due care transport these cattle from the one point on their lines to the other should in effect be ignored, but also that the appellees were required to detail in their pleading the evidence whereby they expected to prove the claimed negligent handling of and injury to their stock, as well as the particular times and places along the carriers' through route where both took place. I cannot think the refusal to put so great a burden on them constituted the denial of any such right in appellants, under the facts here obtaining, as probably caused the rendition of an improper verdict against them, Rule 62a; Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515, 522; Burrell v. Grisier, 111 Tex. 477, 240 S. W. 899; Golden v. Odiorne, 112 Tex. 544, 249 S. W. 822, 825; especially when, under what seems to have been the undisputed evidence of the actual damages sustained, the appellees were only awarded about 25 per cent.

This petition indisputably was good against the general demurrer, and, so far as appears to me, there was neither injury to nor surprise on the part of appellants entailed as a result of the overruling of the special exceptions; they having actually had present as witnesses in their behalf T. A. Pressly, corral foreman at Beaumont, who unloaded and reloaded the cattle at Beaumont, F. H. Ross, conductor, in charge of the train that carried the cattle out of Beaumont to Jacksonville, L. Roberts, Western Weighing & Inspection Bureau, who inspected the cattle on arrival at Fort Worth, three train dispatchers, H. H. Buxton, L. Powell, and F. E. Hoefer, and L. H. Baker, a veterinarian. This declaration of our Supreme Court through the Commission of Appeals in the Golden Case would therefore seem directly ápropos:

"Where a trial court commits an error of law in overruling a general demurrer to plaintiff's petition, the judgment should be reversed; but where the trial court commits an error of law in overruling a special exception, the petition being good as against a general demurrer, but upon the trial the judgment rendered is such that the plaintiff was entitled to recover upon the merits of the case, and the defendant does not show that he was surprised or otherwise injured by the improper overruling of the special exception, the judgment should be affirmed. When given this application, rule 62a is constitutional."

Manifestly such a burden would have been impossible of discharge on the appellees' part —that is, to have specifically alleged the particular times when and places where, along the one continuous and unbroken 350-mile trip they contracted with appellants for, the alleged killing, skinning, bruising, and shrinking of their cattle occurred—because, if that took place at all under the averments, it resulted from the claimed acts of appellants, in so negligently operating the moving train at different times and places along the through route as to jerk the cattle down, or suddenly jam them violently together, which obviously could not be so particularized. See, also, Southern Kansas R. Co. v. Bennett, 46 Tex. Civ. App. 379, 103 S. W. 1115; San Antonio & A. P. R. Co. v. Martin, 49 Tex. Civ. App. 197, 108 S. W. 981; Missouri Pac. Ry. Co. v. Graves, 2 Willson, Civ. Cas. Ct. App. § 676.

Neither was it necessary to resort to presumption as to negligence; there being in my opinion sufficient testimony to establish it.

These reasons for the dissent are respectfully expressed.

PER CURIAM.
Rehearing denied.

GRAVES, J. (concurring).

When my dissent from the order refusing appellees' motion for rehearing was noted on the docket, opportunity had not been afforded me of reading the cases of Waller v. Leonard, 89 Tex. 507, 35 S. W. 1045, and Schoonmaker v. Clardy (Tex. Com. App.) 244 S. W. 124, cited for the first time in appellants' answer filed to-day to appellees'.motion for rehearing. While still adhering to the views expressed in my individual opinion on original hearing relating to the overruling of special exceptions to the appellees' pleadings, the two opinions referred to now cited by appellants sustain the other holding of this court with reference to the sufficiency of appellants' bill of exceptions No. 6, relating to the excluded testimony of L. Roberts with reference to the innate propensities of the cattle shipped; in other words, these two opinions constitute the latest expression of our Supreme Court as to the sufficiency of the bill of exceptions referred to, and, since the testimony excluded clearly seems to have been relevant and material, I.withdraw my dissent on rehearing and concur in the overruling of the appellees' motion.